STATE OF NEBRASKA EX REL. WESTERN NEBRASKA TECHNICAL COMMUNITY COLLEGE AREA, APPELLEE, v. KATIE TALLON, COUNTY TREASURER OF SHERIDAN COUNTY, NEBRASKA, ET AL., APPELLANTS.

219 N. W. 2d 454

Filed June 27, 1974. No. 39522.

Michael V. Smith of Smith & King, for appellants.

Russell E. Lovell of Lovell, Raymond & Hippe and John K. Sorensen, for appellee.

Robert G. Simmons, Jr., for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This is an action in mandamus in which the respondents challenge the constitutionality of section 79-2626, R. S. Supp., 1973, which provides for the raising of funds by a property tax levy in partial support of the system of technical community colleges initially created by L.B. 759 of the 1971 legislative session. The relator, the Western Nebraska Technical Community College Area, brought this action against the treasurer and commissioners of Sheridan County to require them to remit to the relator all proceeds of a one mill property tax levy which had been made in Sheridan County pursuant to section 79-2626, R. S. Supp., 1973. The District Court, after hearing, found the Technical Community College Area Act to be constitutional in the respects challenged and issued a peremptory writ of mandamus as requested

by the relator. Respondents' motion for a new trial was overruled and they have appealed.

The critical determinations in this case all turn on the provisions of Article VIII, section 1A, of the Nebraska Constitution. That section was first adopted in 1954, and amended to its present form in 1966 after Nebraska had adopted a state sales and income tax. It provides: "The state shall be prohibited from levying a property tax for state purposes." The application of that constitutional provision to what has been called the Nebraska Technical Community College Area Act requires a résumé of the provisions of the act as well as some history and background as to the former post-secondary, non-baccalureate public education system in Nebraska and its relationship and incorporation into the system created by the act. Hereafter sections 79-2601 to 79-2633, R. R. S. 1943, together with amendments to those sections in successive legislative sessions, generally known as the Nebraska Technical Community College Area Act, will be referred to as the act.

The traditional 2-year academic junior colleges were the first of the post-secondary, non-baccalaureate public educational institutions to be established in Nebraska. Two were established in 1926 at McCook and Scottsbluff. Norfolk followed in 1928, Fairbury in 1941, North Platte in 1965, and Columbus in 1969. They were local institutions, locally controlled and financed by local property taxes on the property within the local district, which by 1969 was usually one county. The first post-secondary state-operated and state-financed school to offer exclusive occupational or vocational programs was established in Milford in 1941, and a second state-operated and state-financed institution was established some 25 years later at Sidney. In 1965, the Legislature authorized the establishment of area vocational schools over multi-county areas. They were area controlled and financed by an area property tax levy. The first

institution of this group to be established was at Hastings, followed later by North Platte and Norfolk. Omaha and Lincoln were added by legislative action in 1967. In 1969, the names of these schools were changed to technical colleges. At the time of passage of the act in 1971, all the schools and colleges designated above were placed into the statewide system provided for under the act. Six junior colleges, five area vocational schools or colleges, and two state vocational institutions comprised the original thirteen institutions with which the new statewide independent system of technical community colleges commenced its operations under the act. See Schleiger, "The Evolution of the Nebraska Comprehensive Technical Community College System."

The Legislature declared that its intent and purpose in adopting the act was "to create a new statewide, independent system of locally-governed technical community colleges which will:

"(1)  Insure that each technical community college area shall offer comprehensive educational, training, and service programs to meet the needs of both the communities and students served by combining realistic and practical courses in vocational technical education, high standards of excellence in academic transfer courses, and comprehensive community service programs;

"(2)  Provide administration by state and area boards which will avoid unnecessary duplication of facilities or programs, which will encourage efficiency and creativity in education and training to meet the needs of the community and students;

"(3)  Allow for the growth, improvement, and modification of the technical community colleges and their programs as future needs arise; and

"(4)  Establish that technical community colleges are, for the purpose of education, an independent, unique, and vital segment of the state's higher education system, separate from both the established grade and high school

system and from other institutions of higher education, and not to be converted into four-year baccalaureate degree-granting institutions." § 79-2601, R. R. S. 1943.

A technical community college is defined as an institution operating pursuant to the act and "offering vocational technical education, two-year academic programs, and comprehensive community service programs; * * *." § 79-2602, R. R. S. 1943.

The initial act in 1971 designated eight different community college areas but did not place each of the counties in the State of Nebraska into an area but left the forming or joining of areas to the vote of the citizens, or otherwise for designation by the Legislature during the 1973 legislative session, since the act did not become fully effective operatively until July 1, 1973. The 1973 Legislature designated seven rather than eight technical community college areas. The entire State of Nebraska, designated by counties or portions of counties, was placed into one of the seven areas. § 79-2603, R. S. Supp., 1973.

Operation of any state vocational technical college, area vocational technical school, or junior college, located within the geographical boundaries of a technical community college area was to be assumed by the area on July 1, 1973. When the area assumed the operation of any of the three types of institutions, the technical community college area succeeded to all the property and property rights of every kind held by or belonging to the state vocational college, area vocational technical school, or junior college, and was to be liable for and assume and pay all contracts and obligations of those institutions. The institutions were to be deemed fully compensated by the assumption of the obligations and contracts for all the properties and property rights of every kind acquired by the technical community college area. After assumption of operation by the area, the former institutions were to be operated as "a tech-

nical community college with major emphasis on occupational education." § 79-2604, R. S. Supp., 1973.

The act created a State Board of Technical Community Colleges. The state board consisted of one member to be chosen by each area board from among the members of such area board and one member to be chosen by the State Board of Vocational Education from among the members of such board. § 79-2612, R. R. S. 1943.

The state board was given general supervision and control over the state system of technical community colleges. It was charged with various powers, duties, and responsibilities in order to insure that each community technical college area would offer comprehensive educational, training, and service programs. Those powers involve broad general policy matters, including financial and budgetary procedures and the establishment of guidelines and plans for the development of technical community college education and training in the state. The powers and duties of the state board include the reviewing the budgets prepared by area boards; the establishing of guidelines for the disbursement of funds; and responsibility to receive and disburse such funds for maintenance and operation and capital support for the technical community college areas. The state board's duties also include establishing minimum standards to govern the operation of the technical community colleges with respect to qualifications and credentials of instructional and key administrative personnel; internal budget accounting, auditing, and financial procedures; content of the curriculum and other educational and training programs, and the requirements, degrees, and diplomas awarded; setting of standard admission policies which "may provide for preference for Nebraska residents"; criteria and procedures for all capital construction, including the establishment, installation, and expansion of facilities within the various technical com-

munity college areas; and exercising any other powers, duties, and responsibilities necessary to carry out the purpose of the act. § 79-2616, R. S. Supp., 1973.

The act also creates a technical community college board of eleven members for each of the areas. In 1971, the initial members were appointed by the Governor but thereafter are to be elected, except that the board of education of the Omaha school district is designated as the area board for that technical community college area. Members are required to be residents and electors of the particular area. See, §§ 79-2617 and 79-2620, R. S. Supp., 1973.

Each area board has the power and duty to operate all public junior colleges and vocational technical schools and colleges in its area in accordance with the provisions of the act. Essentially the powers and duties of the area board involve administrative control of the area institutions, which in almost all major instances is subject to the state board. The area boards may establish fees and charges for the facilities authorized by the act, including reasonable rules and regulations for the government thereof, not inconsistent with the rules and regulations of the state board. The area boards may construct, lease, or purchase facilities only "with the approval and direction of the state board." The area boards may issue and sell revenue bonds for construction or acquisition of capital assets only "with the approval of the state board." The area boards are required to enforce the rules and regulations prescribed by the state board and promulgate such rules and regulations, and perform all other acts not inconsistent with the law or rules and regulations of the state board. The last 2 of 17 enumerated powers and duties of the area boards are: "(16) May perform other activities consistent with (the act) and not in conflict with the directives of the state board; and

"(17) Shall perform any other duties and respon-

sibilities imposed by law or rule and regulation of the state board." § 79-2619, R. R. S. 1943.

Section 79-2621, R. R. S. 1943, provides: "After July 1, 1973, when any resident of the state enrolls in any program or course maintained or conducted by a technical community college area other than the one in which he is a resident, such person shall pay the same tuition as a resident of the area offered the course."

The crucial section as to constitutionality here is section 79-2626, R. S. Supp., 1973. That section provides in part: "Beginning July 1, 1973, all costs of technical community college areas shall be financed as provided in sections 79-2601 to 79-2633. The governing board of each area shall annually, prior to July 1, 1972, and each year thereafter, prepare a proposed budget for the fiscal year beginning the following July 1. The budgets shall show all expenditures proposed by the board, and the revenue anticipated from tuition, state appropriations, the property tax levy, and all other sources. Such budgets shall be submitted by August 1 to the state board. The state board shall review such budgets and attach its recommendations thereto and transmit them to the Director of Administrative Services not later than September 15. The final budget for each area shall be set by the Legislature. * * * From the final budget for each area, the Legislature shall deduct (1) the amount to be received from tuition and other fees, (2) the amount to be received from property tax, (3) federal funds other than direct grants, and (4) revolving funds other than auxiliary enterprises. The Legislature shall appropriate to the area boards the amount remaining after such deductions. The distribution of state funds shall be made to each area board on July 1, October 1, January 1 and April 1 of each year. Such appropriation shall be from the General Fund or other available funds. The balance of the budget for each area shall be raised by the area board from tuition and other nontax sources

and by a levy of not to exceed one mill on all taxable property within each area. The state board shall advise each area board of the budget and appropriation for that area adopted by the Legislature. Each area board shall then determine the amount necessary to be raised by the property tax levy and prior to September 1 of each year shall certify to the county board of equalization of each county within the area a levy not to exceed one mill, uniform throughout the area, which shall be sufficient to raise the amount required. No appropriation of state funds shall be made to any technical community college area whose mill levy is less than one mill."

The respondents contend that the property tax levies provided for in that section are in violation of Article VIII, section 1A, of the Nebraska Constitution, which prohibits the State from levying a property tax for state purposes.

It is quite obvious that the act does create a new statewide independent system of post-secondary education. It reflects a modern coordinated legislative effort to solve the problem of providing more complete educational opportunities for the citizens of Nebraska. It also embodies an entirely new and different mixture of control and operation of educational systems by state and local units of government. For that reason, extensive reliance upon past educational patterns and purposes may be treacherous. The fabric of an educational system is woven of many threads. It is impossible to separate the threads which proclaim a state purpose from those which proclaim a local purpose and difficult to pick them out or identify them in the overall pattern. It is transparently clear that the State has, and should have, an abiding purpose to further all educational opportunities for its citizens, whether the particular institution or system is controlled, operated, and financed by local units of government under the provisions of state law, or whether it is controlled, operated, and

financed directly by the state government, also under the provisions of state law.

There is little help from prior precedent on these issues when there is no historical pattern which establishes a predominant state or local purpose. This court has decided two cases involving an interpretation of Article VIII, section 1A, of the Nebraska Constitution, which prohibits the State "from levying a property tax for state purposes." Those cases are Craig v. Board of Equalization, 183 Neb. 779, 164 N. W. 2d 445; and R-R Realty Co. v. Metropolitan Utilities Dist., 184 Neb. 237, 166 N. W. 2d 746. Neither of them provides direct assistance. In the Craig case we held that a statute requiring a county to levy a property tax for purposes substantially local does not contravene the prohibition of the constitutional amendment, although the statute commingles state and local purposes. In that case the statute required each county to levy a tax to pay the expense of maintenance of its own residents in state mental hospitals and in the Beatrice State Home. In the MUD case we held that a statute authorizing or requiring a city or county to levy a property tax for local fire protection purposes does not contravene the constitutional amendment. Both cases reflect a factual situation in which the property tax levy was for purposes substantially and predominantly local.

Here the historical factual background of purposes and responsibilities is uncertain. Where state and local purposes are commingled in a statutory enactment creating a new, independent, statewide system of technical community college areas, the crucial issue of the use of property tax levies to support the system turns on a determination of whether the controlling and predominant purposes are state purposes or local purposes. The application of the constitutional amendment prohibiting the State from levying a property tax for state purposes hinges on that determination. The question of whether an act of the Legislature pertains to state

purposes or local purposes is a judicial question. There is no sure test by which state purposes may be distinguished from local. This court must consider each case as it arises and draw the line of demarcation. State ex rel. City of Grand Island v. Johnson, 175 Neb. 498, 122 N. W. 2d 240. The Legislature has the power to provide by statute for the establishment of a new postsecondary educational system which might be either state or local. Viewed from the historical perspective of educational systems previously established in Nebraska, the pattern of the statewide system here more closely fits the pattern of an independent state system such as the state college system or the state university system, than it does the pattern of a traditional local educational system.

Under the act with which we are concerned here, the State has assumed the direct control of major policy decisions which affect the operation of each of the seven community college areas, and the statute reflects a purpose to control the operation of all seven areas for the benefit of the residents of the state as a whole. The provisions requiring that the tuition in any technical community college area for any resident of the State of Nebraska shall be the same as for a resident of the particular area is a strong indication of the legislative purpose to benefit residents of the entire state as contrasted to residents of particular local areas. The direct control by the State over capital expenditures, the right to contract for acquisitions and additions, and to control and direct which facilities and training will be available in which area, together with the complete and direct control of the individual budget of each technical community college area, demonstrate the dominance of the State as opposed to the local areas in all major matters of control and operation of the statutory system. It is undoubtedly true that such direct control will result in a more efficient and coordinated operation and avoid expensive and uneconomical duplication of facilities and

services. Those particular objectives in themselves reflect the dominance of a purpose to benefit the state as a whole.

The respondents assert that the provisions of section 79-2626, R. S. Supp., 1973, with respect to the levy of a property tax, constitute a property tax levy for a state purpose, which is prohibited by Article VIII, section 1A, of the Nebraska Constitution. We have said: "The levy of a property tax by a local governmental unit should not be treated as a state levy for state purposes merely because the Legislature has authorized or required the local governmental unit to make the levy." R-R Realty Co. v. Metropolitan Utilities Dist., *supra*. The converse of that proposition is that where the Legislature has authorized and required local governmental units to make a property tax levy for state purposes, it should not be treated as a local levy for local purposes merely because it is made by a local governmental unit. To construe the constitutional amendment to prohibit only a direct statewide property tax levy by the State itself would emasculate the amendment and render it virtually meaningless and wholly ineffective.

The provisions of section 79-2626, R. S. Supp., 1973, do not require the area boards to certify a levy of one mill. Nevertheless, they effectively enforce that result by voiding any state appropriation to an area whose mill levy is less than the maximum one mill. It should be noted here also that an appropriation of state funds has already been made at the time the area board is required to certify a property tax levy. The Legislature could not and would not approve any budget or make any appropriation to any area which did not show a one mill levy in its budget request. It is wholly unrealistic to assume that any area board will set its property tax levy at any amount less than the maximum one mill when the effect of that decision is to eliminate all state financial support. For all practical purposes the statute is mandatory in requiring a one mill levy. The result is to provide for a

one mill property tax levy in every county in Nebraska to support a statewide system of technical community colleges.

We hold that where the State assumes the control and the primary burden of financial support of a statewide system of technical community college areas under the provisions of the Technical Community College Area Act, the property tax levy provided for in section 79-2626, R. S. Supp., 1973, is for a state purpose within the meaning of Article VIII, section 1A, of the Nebraska Constitution.

The act provides that a declaration of invalidity of any section or part of any section shall not affect the validity of the remaining portions thereof. The parties have limited the challenge here to those portions of section 79-2626, R. S. Supp., 1973, which provide for the partial financing of the educational system created by the act through property tax levies. Our ruling that the property tax levies provided for are unconstitutional is limited to that determination.

The judgment of the District Court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.