REQUESTED BY: Dear Senator:
In your letter of July 17, 1978, you state that there are two interim study resolutions (LR 278 and LR 279) dealing with the financing of technical community colleges in Nebraska. Apparently some proposals are being considered to increase the state's contribution to the financing of such colleges, perhaps to the point where the state's contribution amounts to more than half of the cost of their operation.
Your question is whether increasing the state's contribution to this extent would create a conflict with ArticleVIII, Section 1A of the Nebraska Constitution, which prohibits the state from levying a property tax for state purposes. Apparently some contention has been made that increasing the state's share of the cost to more than 50% would make the operation of the colleges a `state purpose,' and would preclude financing the balance of the budgets with a property tax.
We do not reach that conclusion. In State ex rel.Western Nebraska Technical Community College Area v.Tallon, 192 Neb. 201, 219 N.W.2d 454 (1974), the court struck down a property tax to finance such colleges, as being in violation of Article VIII, Section 1A, saying:
 "Under the act with which we are concerned here, the State has assumed the direct control of major policy decisions which affect the operation of each of the seven community college areas, and the statute reflects a purpose to control the operation of all seven areas for the benefit of the residents of the state as a whole. The provisions requiring that the tuition in any technical community college area for any resident of the State of Nebraska shall be the same as for a resident of the particular area is a strong indication of the legislative purpose to benefit residents of the entire state as contrasted to residents of particular local areas. The direct control by the State over capital expenditures, the right to contract for acquisitions and additions, and to control and direct which facilities and training will be available in which area, together with the complete and direct control of the individual budget of each technical community college area, demonstrate the dominance of the State as opposed to the local areas in all major matters of control and operation of the statutory system. It is undoubtedly true that such direct control will result in a more efficient and coordinated operation and avoid expensive and uneconomical duplication of facilities and services. Those particular objectives in themselves reflect the dominance of a purpose to benefit the state as a whole.
". . . .
 "We hold that where the State assumes the control and the primary burden of financial support of a statewide system of technical community college areas under the provisions of the Technical Community College Area Act, the property tax levy provided for in section 79-2626, R.S.Supp., 1973, is for a state purpose within the meaning of Article VIII, section 1A, of the Nebraska Constitution."
You will note that the court spoke of the state's assuming control and the primary burden of financial support. There is no indication that providing most of the financial support alone would be sufficient to make it a state purpose as contemplated by the constitutional provision in question. Following the above decision, the Legislature in 1975 made extensive changes in the regulation of the colleges, repealing sections 79-2601 to 79-2635, and enacting sections 79-2636 to 79-2662 in their stead. The new sections gave much more local control to the colleges. Among other things, the Nebraska Coordinating Commission for Technical Community Colleges was created by sections 79-2654 to 79-2661, which, pursuant to section 79-2655, had only advisory supervision over the colleges. In 1977, even this Commission was abolished by the repeal of sections 79-2654 to 79-2661.
In 1976, the Supreme Court again considered the financing of such colleges in State ex rel. Western TechnicalCommunity College Area v. Tallon, 196 Neb. 603,244 N.W.2d 183 (1976). The court this time held that no violation of Article VIII, Section 1A was involved, pointing out that the Commission had only advisory powers, with little, if any, actual control over the technical community colleges. The court said:
 ". . . Yet, in every instance where schools are locally controlled and supported, no objection has been found to a provision for state aid. No constitutional objection thereto has been called to our attention and we know of none. The mere granting of state aid does not render a school operation a state function."
We do not believe that an increased proportion of state aid will operate to convert a local purpose to a state purpose, where there is local control and at least some local financial support. You obviously contemplate that there will continue to be some local support, as there would otherwise be no occasion to inquire about the effect of Article VIII, Section 1A. We therefore conclude that increasing the state aid to the colleges to more than 50% of their operating expenses would not make such operation a state purpose, as contemplated by Article VIII, Section 1A.