REQUESTED BY: Senator Vard Johnson Member of the Legislature 1101 State Capitol Lincoln, Nebraska 68509
Dear Senator Johnson:
You have called our attention to LB 522, and have asked us whether there would be any conflict between its provisions and those of Article VIII, Section 1A of the Nebraska Constitution. We conclude that there would not.
Article VIII, Section 2 provides: `The state shall be prohibited from levying a property tax for state purposes.' To find a violation of this section of the Constitution we would need to find first, that a state function or purpose was involved, and second, that the bill provided for a property tax levy to support it. There is a complete absence of the second requirement.
The committee summary of the purpose of the bill and the changes it effects is: `LB 522 proposes that all functions and authority of county welfare offices will be assumed by the State Department of Public Welfare. Currently, Nebraska has a state supervised, county administered welfare system. Under the proposed system, welfare would be state administered.' Without reaching any final conclusions on the question, let us assume for the purpose of this discussion that under the present law the operation of the welfare system is not a state purpose, but that LB 522 will convert it into a state purpose.
Section 36 of the bill would amend Neb.Rev.Stat. 68-1022
(Supp. 1980), but we point out that this section was amended in 1981 by LB 39, and is therefore found in the 1981 supplement. Section 68-1022 provides that commencing July 1, 1981, the county of `legal settlement' of an eligible recipient shall pay fourteen percent of the cost of medical assistance for such recipient. If the recipient has no county legal settlement, medical assistance is paid from state funds and such funds as may be allocated by the federal government. LB 522 would reduce the county percentage by two percent per year until July 1, 1988, at which time all such assistance would be paid by state and federal funds.
You are concerned about whether this county contribution would violate Article VIII, Section 1A. You ask alternative questions about whether a violation would occur if the counties retain their general assistance functions, or if they do not retain them, and the welfare programs are completely state administered. We will not discuss these questions separately, as we see no violations under either alternative.
The only case in which a violation of Article VIII, Section 1A has been found was State ex rel. Nebraska TechnicalCommunity College Area v. Tallon, 192 Neb. 201,219 N.W.2d 454 (1974). In that case the court found that the operation of the colleges had become a state function, and that the statute, in effect, mandated a one mill property tax levy for the support of the colleges.
The crucial difference is that LB 522 does not mandate, or even authorize, a separate mill levy to provide the funds for the counties to make the contributions required by 68-1022. These contributions are to be made out of general county funds.
In Kovarik v. County of Banner, 192 Neb. 816,224 N.W.2d 761 (1975) the court noted this distinction between the case under consideration and Talon, saying:
 We also note in passing that under the facts of the foregoing case the state required the county to levy a property tax to support the technical college, which is not true in the instant case. We properly held under the facts of that case that a `state purpose' rather than a `local purpose' was involved. We also wish to point out that counties are not supported solely by property taxes. There are other sources of revenue available to the counties other than property taxes, such, for example, as inheritance taxes. In fact, it is clear from a reading of sections 77-2032 and 77-2033, R.R.S. 1943, that inheritance taxes may be credited by the county board to the county general fund, to be used `for the relief of worthy, incapacitated or indigent persons * * *.' (Emphasis supplied.) There is no requirement whatsoever that any county levy a property tax to pay the fees for appointed counsel.
In general, it can be said that the Legislature has complete control over the revenues of a county, and may direct the application of such revenues as it sees fit, so long as that application is for the benefit of the public in the county where the revenues were raised. For a discussion of this principle, see State ex rel. City of Omaha v. Boardof County Commissioners, 109 Neb. 35, 189 N.W. 639 (1922), and Omaha Parking Authority v. City of Omaha, 163 Neb. 97,77 N.W.2d 863 (1956). Article VIII, Section 1A was not intended to affect this fundamental relationship between the state and its political subdivisions.
The payments required of a county by § 68-1022 are for the benefit of recipients having legal settlement in the county. This local connection is sufficient to authorize the Legislature to require the county to contribute to their medical assistance. There is no separate mill levy authorized to raise the funds necessary to make such payments, and sources of revenue available to the county lose their identities when mingled in the county general fund. So, even though the county may raise most of its funds by property taxes, we certainly cannot say that the state has levied a property tax for state purposes. We therefore conclude that LB 522 is not subject to such an attack.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General