REQUESTED BY: Senator Dave Newell Nebraska State Legislature 1406 State Capitol Lincoln, Nebraska 68509
Dear Senator Newell:
You have asked two questions regarding the constitutionality of LB 814 and LB 922, both scheduled for committee hearings in the near future.
You first ask, if the state assumes operation of the technical community colleges as provided for in the bills, whether revenue bonds presently issued by governing area boards would have to be liquidated to avoid a violation of Article XIII, Section 3 of the Nebraska Constitution, providing in part that the credit of the state shall never be given or loaned in aid of any individual, association or corporation. To some extent, this issue also requires an analysis of Article XIII, Section 1 of the Nebraska Constitution.
Initially, it should be noted that Neb.Rev.Stat. 79-1438.04 (Reissue 1981) provides that revenue bonds issued by the technical community colleges are to be `payable solely out of their revenue.' That section further provides that `bonds issued . . . shall not be an obligation of the State of Nebraska, and no tax shall ever be levied to raise funds for the payment thereof or interest thereon.' This section would appear to clearly provide that the state is not secondarily liable on the bonds, that the revenue bonds involved are satisfied only by the revenue-raising capacity of the secured item, and are not an obligation of the state, nor a giving of the credit of the state to aid an individual, association, or corporation in violation of ArticleXIII, Section 3 of the Nebraska Constitution. In our opinion LB 814 and LB 922 will not render the state secondarily liable on revenue bonds already issued and outstanding. However, our opinion that the state does not become secondarily liable on revenue bonds already issued and outstanding is confined to our review of the provisions of LB 814 and LB 922, and Neb.Rev.Stat. § 79-1438.04 (Reissue 1979). As you know, this office did not act as bond counsel to any area boards who may have issued revenue bonds. Therefore, we have not reviewed the documents surrounding those issuances and can only opine that nothing in LB 814 or LB 922 or Neb.Rev.Stat. § 79-1438.04 (Reissue 1979) would render the state secondarily liable on the area board's revenue bonds issued and presently outstanding.
In our view, neither LB 814 nor LB 922 violate ArticleXIII, Section 3 of the Nebraska Constitution. First, neither LB 814 nor LB 922 obligate the state for the payment of outstanding revenue bonds. Thus, the credit of the State of Nebraska has not been loaned or given in aid of any individual, association, or corporation. Second, to prove a violation of Article XIII, Section 3, one must show that the credit of the state or a governmental subdivision of the state has been given for a private rather than a public use.State ex rel. Beck v. City of York, 164 Neb. 223,82 N.W.2d 269 (1957). Assuming the revenue bonds were raised for the purposes set forth in Neb.Rev.Stat. § 79-1438.04 (Reissue 1979), the credit of the area boards was given or lent in aid of a public not a private use.
Under those circumstances, there can be no violation of Article XIII, Section 3.
However, if the state became secondarily liable on the revenue bonds by virtue of the provisions contained in the documents attendant the issuance of revenue bonds, to which we are not privy, our analysis does not stop with Article XIII, Section 3. One must then determine whether the provisions of Article XIII, Section 1 of the Nebraska Constitution have been violated. That section prohibits the state from contracting debts in excess of an aggregate of $100,000, with certain exceptions not relevant here. The `special fund doctrine' has evolved as an exception to this constitutional prohibition and generally applies where an indebtedness incurred in the construction of a project is payable solely from revenue arising from the operation of the project. In Nebraska, the special fund doctrine is not applicable to obligations whether primary, secondary, or contingent, payable from sales, excise or income taxes.State ex rel. Douglas v. Thone, 204 Neb. 836,286 N.W.2d 249 (1979). Thus, if the state became secondarily liable on bonds in excess of $100,000 it is likely that this obligation would be payable from the general revenue of the state. Thus, the special fund doctrine would not aid the state in its argument that Article XIII, Section 1 has not been violated. In our view, that section would be violated if, by virtue of the documents used in issuing any of the area board's revenue bonds, the state is made secondarily liable for payment of the bonds. Confining our opinion to LB 814, LB 922 and Neb.Rev.Stat. § 79-1484.04, we see no constitutional problems with respect to Article XIII, Section1 of the Nebraska Constitution as it relates to revenue bonds already issued and outstanding since the state is not obligated on the bonds.
You next ask whether the funding provisions of LB 922 would violate Article VIII, Section 1A of the Nebraska Constitution, providing a prohibition on the State levying a property tax for state purposes, or the teachings of Stateex rel. Western Nebraska Technical Community College Areav. Tallon, 192 Neb. 201, 219 N.W.2d 454 (1975) (TallonI), and State ex rel. Western Technical Community CollegeArea v. Tallon, 196 Neb. 603, 244 N.W.2d 183 (1976) (Tallon II).
In Tallon I the Supreme Court of Nebraska held that where the state assumes the control and the primary burden of financial support of a state-wide system of technical community colleges, the property tax levy statutorily provided for was for a state purpose within the meaning of the aforementioned constitutional provision. This provision for partial funding of the community college system through a state property tax levy was for a state purpose, and therefore ran afoul with Article VIII, Section 1A, prohibiting property tax levies for state purposes.
In Tallon II the court found that the Legislature had repealed the unconstitutional aspects of the technical community college system statutory scheme and replaced it with a provision which passed constitutional muster. Specifically, the court found that the technical community college areas had become essentially local in character the area boards exercised control, like a state commission acting as a conduit for federal funds and only in an advisory
capacity. As the technical community college system had become local in character, the non-compulsory property tax levy was not a property tax for state purposes in violation of Article VIII, Section 1A.
It can be strongly argued that LB 922 meets the constitutional standards set forth in the foregoing cases. LB 922 provides for state administration of the technical community colleges beginning on July 1, 1988, replacing the area boards now in existence. Under the authority of TallonII, the area boards may constitutionally levy property taxes. However, in Section 28 of the bill, Neb.Rev.Stat. 79-2651 is to be amended to prohibit the state administrative board from levying property taxes after July 1, 1988, the effective date of state administration. As the area boards appear to remain in control until July 1, 1988, under the act, and at that time the state board is expressly barred from levying a property tax, there has been no violation of the foregoing constitutional provision. With an explicit prohibition against property tax levy by the state board provided in the bill, the requirement of Article VIII, Section 1A is met.
However, it can also be argued that a `state' rather than `local' purpose predominates in LB 922 as evidenced by (1) the statement of legislative intent (LB 922, Section 28(2)), and (2) the Legislature's commitment to appropriate by the 1985-1986 fiscal year more than 50 percent of all technical community colleges' budgets and by the 1986-1987 fiscal year nearly 100 percent of their annual budgets. Although the powers of the area boards remain intact until July 1, 1988, the state will have assumed approximately 91 percent of the financial burden of the technical community college system by the 1986-1987 fiscal year. Tallon II
was a plurality decision, the precedential value of which is not as solid as it might be in view of the fact it was a split decision by a court whose members, save one, are not currently members of the Nebraska Supreme Court. We cannot unequivocally predict that the current court would now follow the authority of Tallon II. However, we cannot conclude that LB 922 is clearly unconstitutional as violative of Article VIII, Section 1A of the Nebraska Constitution.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Michaela M. White Assistant Attorney General