759 N.W.2d 919 (2009)
277 Neb. 149
Angus GAREY et al., appellees and cross-appellants,
v.
NEBRASKA DEPARTMENT OF NATURAL RESOURCES et al., appellants and cross-appellees.
No. S-08-581.
Supreme Court of Nebraska.
February 6, 2009.
*921 Jon Bruning, Attorney General, Justin D. Lavene, and Katherine J. Spohn for appellants Nebraska Department of Natural Resources et al.
Donald G. Blankenau and Thomas R. Wilmoth, of Husch, Blackwell & Sanders, L.L.P., Lincoln, for appellants Upper Republican Natural Resources District et al.
Jeanelle R. Lust, Rodney M. Confer, LeRoy W. Sievers, and Jocelyn W. Golden, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., Lincoln, for appellees.
*922 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF THE CASE
Plaintiffs-appellees, who are residents and taxpayers of the Upper, Middle, and Lower Republican Natural Resources Districts of the State of Nebraska (NRD's), filed an action for declaratory and injunctive relief in the district court for Lancaster County alleging that a property tax levy authorized by § 11(1)(d) of 2007 Neb. Laws, L.B. 701, and found at Neb.Rev.Stat. § 2-3225(1)(d) (Reissue 2007) is unconstitutional. The district court concluded that the challenged provision was unconstitutional and entered an order granting declaratory judgment, severed the offending portion of L.B. 701, and enjoined defendants-appellants, who are various governmental agencies, from enforcing § 11(1)(d) of L.B. 701. Appellants appeal this decision, and appellees cross-appeal.
We conclude that the challenged property tax provision of L.B. 701 violates the prohibition found in Neb. Const. art. VIII, § 1A, against levying a property tax for a state purpose. Although the decision of the district court concluding that the challenged provisions of L.B. 701 were unconstitutional was based on different reasoning, we nevertheless affirm.

STATEMENT OF FACTS
Appellees in this case are residents and taxpayers of the NRD's. Defendant-appellant Department of Natural Resources is an administrative department of the State and has jurisdiction over matters pertaining to water rights for irrigation, power, or other useful purposes. Neb. Rev.Stat. § 61-206(1) (Cum.Supp.2006). Defendants the NRD's are districts within the State; one of their purposes is the regulation of ground water within their respective districts. Neb.Rev.Stat. § 46-707 (Supp.2007). The remaining appellants in this case are individuals and entities with the authority to impose and collect property taxes in the counties that make up the NRD's.
The following statement of facts, for which we find support in the record, comes largely from the facts outlined in the district court's order granting injunctive relief and enjoining appellants. The states of Colorado, Kansas, and Nebraska and the United States are party signatories to the Republican River Compact of 1943, 2A Neb.Rev.Stat. appx. § 1-106 (Reissue 2008) (Compact). The primary purposes of the Compact are to
provide for the most efficient use of the waters of the Republican River Basin (hereinafter referred to as the "Basin") for multiple purposes; to provide for an equitable division of such waters; to remove all causes, present and future, which might lead to controversies; to promote interstate comity; to recognize that the most efficient utilization of the waters within the Basin is for beneficial consumptive use; and to promote joint action by the States and the United States in the efficient use of water and the control of destructive floods.
Id., art. I at 1183.
Under the terms of the Compact, each signatory state is allotted an annual number of acre-feet of water for "beneficial consumptive use." Id., art. IV at 1184. The specific allocations and the sources of those allocations are found in article IV of the Compact and provide that Colorado is to receive 11 percent of the annual allotment, Kansas is to receive 40 percent of the annual allotment, and Nebraska is to *923 receive 49 percent of the annual allotment. As the district court noted, by entering into the Compact, Nebraska agreed to limit its consumption of water from the Republican River Basin to ensure that downstream Kansas would receive its allotted share of the water.
In 1999, Kansas was allowed to file a bill of complaint with the U.S. Supreme Court alleging that Colorado and Nebraska were violating the Compact by using more than their allotted shares of the water supply. After a special master approved a settlement agreement among the parties without reservations, the case was settled, thereby dismissing any claims as of December 15, 2002. Among other things, the settlement established a procedure for measuring water usage using a computer model; allowed the use of allocated water anywhere in a state in normal years and, in Nebraska, anywhere upstream of Guide Rock in dry years; and provided that water imported into the Republican River Basin from another river basin can be considered as a credit against a state's computed beneficial consumptive uses.
In 2004, Nebraska's Governor and Attorney General informed the NRD's' water users that to comply with the settlement agreement, water consumption would need to be reduced in dry years, and that to ensure compliance with the Compact, the State could step in if the NRD's failed to control usage. In 2006 and 2007, the department leased or purchased surface water rights from the Bostwick Irrigation District to assist the State in meeting its obligations under the Compact.
On May 1, 2007, the Governor signed L.B. 701 into law. Section 11 of L.B. 701, at issue in this case, amended § 2-3225(1)(d) and (2), and the statute provides as follows:
[(1)](d) In addition to the power and authority granted in subdivisions (a) through (c) of this subsection, a district with jurisdiction that includes a river subject to an interstate compact among three or more states and that also includes one or more irrigation districts within the compact river basin may annually levy a tax not to exceed ten cents per one hundred dollars of taxable valuation of all taxable property in the district for the payment of principal and interest on bonds and refunding bonds issued pursuant to section 2-3226.01....
(2) The proceeds of the tax levies authorized in subdivisions (1)(a) through (c) of this section shall be used, together with any other funds which the district may receive from any source, for the operation of the district. When adopted by the board, the tax levies authorized in subdivisions (1)(a) through (d) of this section shall be certified by the secretary to the county clerk of each county which in whole or in part is included within the district. Such levy shall be handled by the counties in the same manner as other levies, and proceeds shall be remitted to the district treasurer. Such levy shall not be considered a part of the general county levy and shall not be considered in connection with any limitation on levies of such counties.
On May 1, 2007, the office of the Nebraska Governor issued a press release stating that the passage of L.B. 701 created a cash fund which, among other things, could "be used to help the state continue to comply with interstate compacts and agreements." The press release went on to state that L.B. 701 provided $3 million to allow the department "to negotiate a one-year lease of surface water rights in the Bostwick Irrigation District to help the state comply with the ... Compact." The record shows that prior to the enactment *924 of L.B. 701, the State had purchased or leased these water rights.
In June 2007, the NRD's entered into an interlocal cooperation agreement creating the Republican River Basin Coalition (RRBC). The purpose of the RRBC is to
provide the authority, resources, services, studies, and facilities needed for the representation of the interests of the [NRD's] in proceedings before all agencies, tribunals, courts, and any administrative, legislative, executive, or judicial bodies concerning or affecting the NRDs' actions, decisions, and policies to regulate/manage water to ensure the State of Nebraska remains in compliance with the ... Compact....
The agreement stated, "The RRBC shall specifically act within the authorities granted by LB 701...." The RRBC has entered into various agreements to lease water.
On September 13, 2007, letters were sent on behalf of appellees to each of the NRD's, formally requesting that the NRD's "vote not to levy any property taxes... sanctioned by the Nebraska Legislature in L.B. 701, as a means of meeting Nebraska's commitment to comply with the ... Compact." Nevertheless, in September 2007, the NRD's each adopted property tax levies authorized by L.B. 701.
In response to the levies, appellees filed this action seeking a declaratory judgment and alleging that the property tax levy found in L.B. 701 is unconstitutional and unenforceable. Appellees claim that the property tax levy in § 11(1)(d) of L.B. 701 represents a property tax levy for state purposes, in violation of Neb. Const. art. VIII, § 1A; results in a commutation of taxes, in violation of Neb. Const. art. VIII, § 4; and constitutes special legislation, in violation of Neb. Const. art. III, § 18.
After a trial on stipulated facts, the district court entered an order granting declaratory judgment and injunctive relief to appellees, concluding that although § 11(1)(d) of L.B. 701 does not violate Neb. Const. art. VIII, § 1A or § 4, it is special legislation, in violation of Neb. Const. art. III, § 18, and, therefore, unconstitutional. The district court concluded that pursuant to the severability provision of § 34 of L.B. 701, the court's ruling had no bearing on the remaining provisions of L.B. 701. The district court enjoined appellants from enforcing and implementing any property tax levy authorized by § 11(1)(d) of L.B. 701 and found at § 2-3225(1)(d). Appellants appeal, and appellees cross-appeal.

ASSIGNMENTS OF ERROR
Appellants appeal the decision of the district court which concluded that § 11(1)(d) of L.B. 701 is unconstitutional and granted declaratory and injunctive relief, and appellees cross-appeal, claiming that the district court erred when it concluded that L.B. 701 did not violate Neb. Const. art. VIII, §§ 1A and 4. In particular, on cross-appeal, appellees claim that the district court erred when it concluded that the property tax levy in § 11(1)(d) of L.B. 701 is not a property tax levy for state purposes, in violation of Neb. Const. art. VIII, § 1A. Because we find merit to this assignment of error on cross-appeal and our resolution of this assignment of error resolves this case, we do not reach the parties' remaining assignments of error.

STANDARD OF REVIEW
Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. Stenger v. *925 Dept. of Motor Vehicles, 274 Neb. 819, 743 N.W.2d 758 (2008).

ANALYSIS
In this case, the district court entered an order granting declaratory judgment and injunctive relief to appellees, concluding that although § 11(1)(d) of L.B. 701 does not violate Neb. Const. art. VIII, § 1A or § 4, it is special legislation in violation of Neb. Const. art. III, § 18. Appellants challenge the district court's determination that the complained-of portion of L.B. 701 is special legislation, in violation of Neb. Const. art. III, § 18. Appellees cross-appeal, challenging the district court's determinations that the complained-of portion of L.B. 701 does not violate either Neb. Const. art. VIII, § 1A, prohibiting a property tax levy for state purposes, or Neb. Const. art. VIII, § 4, dealing with improper commutation of taxes. We first address the issue raised in the cross-appeal claiming that the district court erred when it failed to conclude that § 11(1)(d) of L.B. 701 violated Neb. Const. art. VIII, § 1A. We conclude that § 11(1)(d) of L.B. 701 violates the prohibition against a property tax levy for state purposes contained in Neb. Const. art. VIII, § 1A, and therefore, we conclude that § 11(1)(d) of L.B. 701 is unconstitutional on this basis.
Under §§ 6(1) and 9 of L.B. 701, the NRD's are given the power to issue bonds for the purpose of acquiring ground water rights, surface water rights, or surface water storage rights to pay for the acquisition of canals and other works or for vegetation management. (L.B.701, § 6(1), is codified at Neb.Rev.Stat. § 2-3226.01(1) (Reissue 2007); L.B. 701, § 9, is codified at Neb.Rev.Stat. § 2-3226.04 (Reissue 2007).) The NRD's can then repay the bond debt by, among other ways, imposing a property tax levy on all taxable property within the NRD's' districts. § 2-3225(1)(d). It is the constitutionality of the property tax levy found in § 2-3225(1)(d), originating in § 11(1)(d) of L.B. 701, that is challenged in this case.
Neb. Const. art. VIII, § 1A, states that "[t]he state shall be prohibited from levying a property tax for state purposes." This constitutional provision contains two aspects: First, the property tax at issue must be levied by the State, and second, the property tax at issue must be levied for a state purpose. The purpose of this section was to require the State, after the adoption of state sales and income taxes, to leave the realm of property taxation for local purposes. Swanson v. State, 249 Neb. 466, 544 N.W.2d 333 (1996).
With respect to our determination of whether a property tax is levied by the State, we have noted that where the Legislature has provided that a local political subdivision is authorized to levy property taxes for state purposes, it should not conclusively be considered as a local property tax levy merely because the levy is enforced by local authorities. See State ex rel. Western Nebraska Technical Com. Col. Area v. Tallon, 192 Neb. 201, 219 N.W.2d 454 (1974). In Tallon, we stated that "[t]o construe the constitutional amendment [at art. VIII, § 1A,] to prohibit only a direct statewide property tax levy by the State itself would emasculate the amendment and render it virtually meaningless and wholly ineffective." 192 Neb. at 212, 219 N.W.2d at 460.
We have also explained that the State cannot circumvent the constitutional mandate of Neb. Const. art. VIII, § 1A, by "converting the traditional state functions into local functions supported by property taxes." Swanson, 249 Neb. at 476, 544 N.W.2d at 340. When state and local purposes are intermingled in a statute, *926 the crucial issue is whether "the controlling and predominant purposes ... are state purposes or local purposes." Rock Cty. v. Spire, 235 Neb. 434, 446-47, 455 N.W.2d 763, 770 (1990) (citing State ex rel. Western Nebraska Technical Com. Col. Area v. Tallon, supra). There is no sure test for determining which state purposes may be distinguished from local purposes, and we have said that this court must consider each case as it arises and draw the line of demarcation. State ex rel. Western Nebraska Technical Com. Col. Area v. Tallon, supra.
In assessing § 11(1)(d) of L.B. 701 for constitutional analysis, we look to the legislative history, as did the district court. See Craig v. Board of Equalization, 183 Neb. 779, 164 N.W.2d 445 (1969) (looking to legislative history of constitutional section when determining whether special levies imposed by statute serve state or local purpose). We have recently stated in the context of a special legislation analysis that "[g]enerally, outside of the plain language used in legislation, a legislative body's purpose or intent in enacting legislation is determined through an examination of the legislative history of a particular enactment." Hug v. City of Omaha, 275 Neb. 820, 824, 749 N.W.2d 884, 888 (2008).
In the instant case, it is clear from the legislative history that L.B. 701 has the purpose of ensuring the State's compliance with the Compact and additionally addressing the water problems of the Republican River Basin. The Introducer's Statement of Intent for L.B. 701 states that the bill "[p]rovide[s] a way to guarantee that Nebraska stays in compliance with the [Compact agreement] with Kansas on an annual basis" and that L.B. 701 "is designed to address the water problem in the Republican River Basin." Committee on Natural Resources, 100th Leg., 1st Sess. (Feb. 28, 2007).
Given this comment and others not repeated here, we conclude that the purposes of the property tax provisions found at § 11(1)(d) of L.B. 701 are intermingled state and local purposes. As we have done in previous cases in this area, our analysis and determination of whether the primary purpose of the property tax provisions in L.B. 701 is a state purpose or a local purpose address both aspects in the constitutional amendment at issue: i.e., whether the property tax was levied by the State and whether it was levied for a state purpose. See, Rock Cty. v. Spire, supra; State ex rel. Western Nebraska Technical Com. Col. Area v. Tallon, 192 Neb. 201, 219 N.W.2d 454 (1974).
In its order, the district court concluded that L.B. 701 does not violate Neb. Const. art. VIII, § 1A, because the predominant purpose of the challenged property tax levy authorized by L.B. 701 is to meet a local purpose. The district court stated that "[t]hrough LB 701, the population of the Republican River Basin can use the tax levy option, if it desires, to meet its agricultural goals, while, at the same time, assisting the state in complying with the Compact." Given the stipulated facts and applicable law, we disagree with the district court's assessment and conclude, as a matter of law, that the property tax levy in L.B. 701 is effectively a state levy and that its primary purpose is for a state purpose. We, therefore, conclude that the property tax levy, § 11(1)(d) of L.B. 701, violates Neb. Const. art. VIII, § 1A.
In determining that the property tax at issue is primarily for state purposes, we note that the legislative history, some of which is quoted by the district court in its order, is replete with testimony that the predominant purpose of the property tax provision of L.B. 701 is for the purpose of maintaining the State's compliance with the Compact. The following are certain *927 examples of comments from the legislative hearing on L.B. 701 which inform our decision and lead us to conclude that § 11(1)(d) of L.B. 701 had as its controlling purpose compliance with the Compact:
DAN SMITH[,] manager of the Middle Republican Natural Resources District[:]... [W]ith the funds proposed for [the department, w]e have the opportunity to purchase water from four different irrigation districts and help Nebraska achieve its first year of compliance since the settlement was approved. This new authority to generate fund[s] from bonds for a variety of groundwater management activities and some actions that will be relevant to [C]ompact compliance... can only be good for Nebraska....
....
MIKE CLEMENTS[,] manager of the Lower Republican [Natural Resources District:]... There is no simple fix for the issues facing the Republican Basin. LB701 does, however, provide additional tools that can be coupled with our existing controls that can be used to help us work towards [C]ompact compliance....
....
JASPER FANNING[,] manager of the Upper Republican Natural Resources District[:]... But at the end of the day, we have a plan that we feel can get us and keep us in compliance with this compact so that we can continue to irrigate in the basin.... But at the end of the day, we need enough total funds available to pay the cost that it's going to take to keep us in compliance so that we can minimize the economic impact of the [C]ompact on the basin....
....
ANN BLEED[,] director of the [d]epartment[:]... I believe that passage of this bill will be extremely helpful in allowing the state and the natural resources districts to do what is necessary to comply with the ... Compact.... The bill, in providing authority for the natural resources districts to issue bonds, fees, or property tax levies, will provide valuable and, I believe, necessary tools to natural resources districts so that they can fairly share responsibility for [C]ompact compliance.
Committee on Natural Resources Hearing, L.B. 701, 100th Leg., 1st Sess. 397-434 (Apr. 4, 2007).
The plain language of § 2-3225 also suggests that the primary purpose of the property tax provision of L.B. 701 is to ensure compliance with the Compact. The provision's authority to tax is narrow, and the funds received, curiously, do not appear to be specifically available for the operation of the districts.
The language of § 11(1)(d) of L.B. 701 grants property taxing authority only to those districts with a jurisdiction which includes "a river subject to an interstate compact among three or more states and that also includes one or more irrigation districts within the compact river basin." (Emphasis omitted.) See § 2-3225(1)(d). On its face, § 2-3225 narrows the applicability of the taxing authority and, according to the record, includes only those districts which are appellants in this case. Further, § 2-3225(2) provides that tax levies authorized and raised in § 2-3225(1)(a) through (c) shall be used "for the operation of the district," but the tax levy at issue in the instant case which is authorized under (1)(d), is, on the face of the statute, excluded from being used for the operation of the district. The failure to include property taxes raised under § 2-3225(1)(d) from being used for the operation of the district suggests that such revenue will be channeled elsewhere, arguably *928 to meet the expenses associated with the State's obligation to comply with the Compact. Based on the legislative history and the plain language of the statute, we conclude that the controlling and predominant purpose behind the property tax provision in § 11(1)(d) of L.B. 701 is for the purpose of maintaining compliance with the Compact, which we conclude is a state purpose.
Indeed, an interstate compact, such as the one at issue in this case, is agreed upon by the states, ratified by the state legislatures, and then ratified by the U.S. Congress, at which time it becomes the law of the United States. See, Compact; U.S. Const. art. I, § 10. See, also, Texas v. New Mexico, 482 U.S. 124, 107 S.Ct. 2279, 96 L.Ed.2d 105 (1987). If an action is brought to enforce the Compact, such action would be an original action before the U.S. Supreme Court and that court could enter an order instructing a party to the Compact to comply with its terms and award damages for noncompliance. See Texas v. New Mexico, supra (explaining that compact is legal document and must be construed and applied in accordance with its terms). The Supreme Court has stated that the proper plaintiff in a case involving a compact is the state. See id.
The Compact was signed by the State, and the special master overseeing the settlement agreement stated:
[T]he Compact is self-executing.... [A] State has an enforceable legal obligation to comply with the Compact, which constitutes the law of the United States as well as of all three compacting States. If a State fails to meet that obligation, it is subject to liability for breach of the Compact.
Kansas v. Nebraska, No. 126 Original, Second Report of the Special Master, appx. D3 at D3-26 to D3-27 (2003), http:// www.supremecourtus.gov/SpecMastRpt/ORG126_4162003.pdf (last visited Feb. 2, 2009).
The State has acknowledged that compliance with the Compact is the State's responsibility by entering into the final settlement stipulation resolving the litigation which was initiated by the State of Kansas in 1998. Further, prior to the enactment of L.B. 701, it was the State rather than local entities which leased or purchased surface water rights from the Bostwick Irrigation District to further compliance with the Compact. Neither the department nor the individual NRD's were parties or signatories to the Compact or the settlement. The State is obligated to comply with the Compact, and a property tax in furtherance of compliance is, for purposes of analysis under Neb. Const. art. VIII, § 1A, a property tax levied by the State for state purposes.

CONCLUSION
We conclude that L.B. 701(1)(d) violates the prohibition against levying a property tax for state purposes found in Neb. Const. art. VIII, § 1A, and that such provision is therefore unconstitutional. Under § 34 of L.B. 701, we sever the offending provision and our ruling has no bearing on the remaining provisions of L.B. 701. Because of our resolution of this case, we need not consider the remaining assignments of error. See Papillion Rural Fire Prot. Dist. v. City of Bellevue, 274 Neb. 214, 739 N.W.2d 162 (2007). Although our reasoning differs from that of the district court, which also concluded that § 11(1)(d) of L.B. 701 was unconstitutional, albeit on another basis, see Tyson Fresh Meats v. State, 270 Neb. 535, 704 N.W.2d 788 (2005), we affirm the order of the district court, which declared § 11(1)(d) of L.B. *929 701 unconstitutional and enjoined its enforcement.
AFFIRMED.