STATE, EX REL. GERTRUDE JORDAN, RELATOR, V. ERNEST B.
QUIBLE, RESPONDENT.

FILED MARCH 28, 1910. No. 16,530.

County Officers: ELIGIBILITY. A woman may be eligible to the office
of county treasurer.

ORIGINAL application for a writ of mandamus to compel
respondent to turn over to relator the records, etc., of the
office of county treasurer. *Writ allowed.*

*F. M. Walcott* and *F. M. Tyrrell*, for relator.

*Charles A. Robbins, D. J. Flaherty* and *E. D. Clarke,*
contra.

ROSE, J.

This is an original application to this court for a per-
emptory writ of mandamus commanding respondent to
turn over to relator the property, money, books, records
and papers belonging to the office of county treasurer of
Cherry county, Nebraska. At the general election No-
vember 2, 1909, relator, who is a woman, and respondent,
who was county treasurer at the time, were rival candi-
dates for that office. He received 683 votes and she re-
ceived 925, a majority of 242 in her favor. The canvass-
ing board so found and issued to her a certificate of elec-
tion. At the proper time she took the necessary oath,
gave an official bond, which the county board approved,
and made a demand on respondent for possession of the
office. He declined to vacate, and this suit followed. Re-
lator is 30 years of age. For more than ten years she has
been a citizen of the United States and a citizen and resi-
dent of Cherry county, Nebraska. For seven years prior
to June 1, 1909, she was the duly appointed and acting
deputy county treasurer of Cherry county. January 5,
1910, respondent took the oath of office and tendered to

30

the county board an official bond for the term beginning January 6, 1910. The bond, however, was rejected. That relator is a woman is shown on the face of her application, and the other facts stated are established by stipulation of the parties.

Respondent resists the writ on the ground of relator's ineligibility. He argues that a county treasurer of Cherry county must be an elector thereof, and that relator does not possess that qualification, since she is not a male person within the meaning of the following provision of the constitution: "Every male person of the age of twenty-one years or upwards belonging to either of the following classes, who shall have resided in the state six months, and in the county, precinct, or ward for the term provided by law, shall be an elector. First, citizens of the United States. Second, persons of foreign birth who shall have declared their intention to become citizens conformably to the laws of the United States, on the subject of naturalization, at least thirty days prior to an election." Const., art. VII, sec. 1. Neither this section nor any other provision of the constitution or statutes declares that a woman shall be ineligible to hold the office of county treasurer. No constitutional or statutory provision inconsistent with the right of a woman to hold that office has been found. A familiar legislative enactment, however, adopts "so much of the common law of England as is applicable and not inconsistent" with the federal and state constitutions and the statutes of this state. This court in its early history announced that the common law thus adopted permitted women to hold offices administrative in character, the duties of which they were competent to discharge. *State v. Cones*, 15 Neb. 444. The office of county treasurer is administrative in character. The duties thereof are in no way incompatible with the incumbency of a woman who is competent to fill the office. The record shows that relator performed the duties of deputy county treasurer of Cherry county for seven years. With knowledge of her past services in that capacity, she

was chosen by the electors in a contest with respondent who was performing the duties of county treasurer at the time of the election. Under the statutes of this state she is competent to make contracts and to bind herself by her official bond.

In support of the argument that a county treasurer must be an elector, respondent has cited *State v. McMillen*, 23 Neb. 385. The controversy therein involved the title to the office of county treasurer of Dawes county. For that office Richards received a majority of the votes cast at the election November 3, 1885. At that time he had not been a resident or citizen of the state six months, and for that reason it was held he was ineligible to election under the constitutional provision quoted and section 64, ch. 26, Comp. St., providing for the contest of an incumbent's election, where he was not eligible to the office. The right of a woman to hold such an office was not considered. The office-holding privilege conferred upon a woman by the common law was not presented or decided. In these respects the case cited by respondent is distinguishable from the present one.

Ineligibility or disability on part of relator does not appear in the record. She has shown a legal title to the office of county treasurer of Cherry county, and the writ will be allowed as prayed.

WRIT ALLOWED.

LETTON, J., concurring in the conclusion.

While I doubt the correctness of the implication that at common law a public office of like character to that of county treasurer could be held by a woman (*Beresford-Hope v. Lady Sandhurst*, 23 L. R. Q. B. Div. (Eng.) 79; *De Souza v. Cobden*, 1 L. R. Q. B. Div. (Eng.) 687), still I concur in the conclusion.

There is a radical difference between conditions in England and Nebraska. Within a little more than half a century a wilderness has been redeemed by a people who, while basing their government and institutions upon the

great principles of the common law, have not followed its minor doctrines with slavish adherence.

Neither constitution nor statute preventing, women have for many years creditably occupied official positions in county affairs in this state apparently by common consent. As deputies they have been county treasurers and county clerks, and as principals county superintendents of schools. To take the position now that they are ineligible or do not possess the necessary qualifications would be to turn back the clock, and to say that common experience and common sense must yield to ancient custom in another country. Under the changed conditions, I think the common law, in so far as it might prevent a woman from holding county offices of a ministerial nature, is not applicable here.

FAWCETT, J., dissenting.

I am totally unable to concur in either the reasoning or conclusion of the majority opinion. With the political proposition of the right of women to vote and hold office I have no quarrel; but neither by the constitution nor by statutory enactment are they given the right to do either, except as to school offices. If their political rights are to be thus extended, it should be done by legislative, and not by judicial legislation. If a woman may be elected county treasurer, she may be elected governor of the state. There is no more constitutional or statutory inhibition of the one than of the other. Can we arbitrarily say that she has sufficient capacity for the former, but not for the latter? Neither the framers of the constitution nor the legislature has said so, and I am unable to discover how we became endowed with such occult powers. It is the candid opinion of the writer that there are many women in the state who would make more efficient governors than some men who have filled that honorable office in the past. I do not think the common law has any application to the case at bar. Our constitution has declared who shall be electors, and to my mind it is an absurdity to hold that

any person can be elected to an office for which he or she is not eligible to vote at the election. Such a construction, in my judgment, does violence to the plain spirit of the constitution. Age and residence for the statutory period are not sufficient. An alien might be of sufficient age, have resided in the state for a generation, and be possessed of unusual ability, and yet no one would contend that he could be elected to the office in question. Why not? Neither the constitution nor the statute expressly forbids. *State v. Cones,* 15 Neb. 444, cited in the majority opinion, is an authority against it. In that case, this court, speaking through MAXWELL, J., based its decision upon the following ground: "The statute merely permits women possessing the necessary qualifications to have a voice in the choice of school officers, selection of teachers, and general management of schools. And being entitled to vote, they are also entitled to act as trustees." In the case at bar, if the statute permitted women to vote for the selection of county officers, I would cheerfully hold, as stated by Mr. Justice MAXWELL, that, being entitled to vote, they are entitled to be elected to the office for which they may vote. The writ should be denied.