STATE OF NEBRASKA EX REL. THE SCHOOL DISTRICT OF SCOTTSBLUFF ET AL., APPELLEES, V. P. COOPER ELLIS, COUNTY TREASURER OF SCOTTS BLUFF COUNTY, NEBRASKA, ET AL., APPELLANTS, IMPLEADED WITH SCHOOL DISTRICT NO. 2 ET AL., APPELLEES, STATE OF NEBRASKA EX REL. THE CITY OF SCOTTSBLUFF ET AL., INTERVENERS-APPELLEES.

77 N. W. 2d 809

Filed July 6, 1956. No. 33985.

*Straight Townsend,* for appellants.

*Mothersead, Wright & Simmons,* for appellees.

*Jack E. Lyman* and *Neighbors & Danielson,* for interveners-appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is the second appearance of this case in this court. Our opinion in the first appeal will be found at 160 Neb. 400, 70 N. W. 2d 320. Therein this court reviewed the decree rendered in the disposition of three actions which were consolidated by the trial court. The purpose of the action was to have interpreted and declared the proper method for allocation and distribution under section 70-653, R. R. S. 1943, of funds received by P. Cooper Ellis, the county treasurer of Scotts Bluff County, from Consumers Public Power District under the provisions of section 70-651, R. R. S. 1943.

To identify the three actions consolidated as aforesaid, the first was by the State of Nebraska, on relation of the junior college district of Scottsbluff, against P. Cooper Ellis, county treasurer, and National Surety Corporation, the surety of the treasurer. In it the plaintiff charged that the distribution made by Ellis was improper and that it deprived the college of money which should have been distributed to it. The action was to recover the funds with interest and attorney's fees.

The second action was by the State of Nebraska, on relation of the school district of Scottsbluff, against P. Cooper Ellis, county treasurer, and National Surety Corporation, the surety of the treasurer. The substantial claim was the same as that in the first action and the kind and character of relief prayed for was the same.

The third action was brought by the county treasurer against the County of Scotts Bluff and all other taxing subdivisions in the county entitled to share in the in lieu of tax payments (except the plaintiffs and intervener city of Scottsbluff in the cases above designated) made by Consumers Public Power District. This action set forth the three interpretations made by the plaintiffs, the intervener city of Scottsbluff, and the county treasurer, and was for a construction of section 70-653, R. R. S. 1943.

By order of the court, the State of Nebraska intervened in this action, as did also Consumers Public Power District.

In the year 1942 the Consumers Public Power District, a public corporation and political subdivision of the State of Nebraska, pursuant to statutory authority, purchased property from the Western Public Service Company, a corporation, which was situated in various political subdivisions of Scotts Bluff County, Nebraska.

Sections 70-651 and 70-653, R. R. S. 1943, furnished the basis for all matters in dispute on the first appeal of this case. Said sections provide as follows:

"Whenever any such district shall purchase or ac-

quire the plant or property of an existing privately owned public utility furnishing electrical energy for heat, light, power, or other purposes, for use within this state, such purchase shall be upon the condition expressed in the contract of purchase and instrument of conveyance that such district as long as it shall continue to be the owner of such property, shall annually pay out of its revenue, to the State of Nebraska, county, city, village and school district in which such public utility property is located, in lieu of taxes, a sum equal to the amount which the state, county, city, village and school district received from taxation, including occupational taxes, from such property or from the person, firm or corporation owning the same during the year immediately preceding the purchase or acquisition of such property by such power district. The directors of any such district shall not incur any personal liability by reason of the making of such payments." § 70-651, R. R. S. 1943.

"All sums of money to be paid by such districts in lieu of taxes shall be paid at the times, places, and to the tax-collecting officers, as now or may hereafter be provided by law for the payment of taxes, as long as such district shall continue to be the owner of such property, and such tax-collecting officers are hereby authorized and directed to receive and collect the same, and distribute all money so received to the state and governmental subdivisions entitled thereto proportionate to the respective tax levies for the current year of the state and governmental subdivisions entitled to participate in such distribution." § 70-653, R. R. S. 1943.

This court in our former opinion interpreted the aforementioned sections of the statute as follows: By the clear language of section 70-651, R. R. S. 1943, it was intended that the money to be paid in lieu of taxes was to be paid to the governmental subdivision in which the particular property acquired was located and had been taxed for the previous year. That was the statutory ob-

ligation and the obligations of the contract entered into pursuant to the statute.

Under the clear language of the statute, section 70-651, R. R. S. 1943, if Consumers acquired property in the school district the district became entitled to receive the equivalent of what it had received in taxes for the previous year. If there was a city or village which levied taxes on this property it was entitled to receive in lieu of taxes what it had received the previous year. The county and state of course must be assumed to have levied taxes on such property the previous year. Each was entitled to receive in lieu of taxes what it received as taxes on this property for the previous year.

This court went on to say: "Section 70-653, R. R. S. 1943, in nowise changes or purports to change the obligation of Consumers under section 70-651, R. R. S. 1943. It does however by its terms change the method of distribution of the money payable in lieu of taxes on the property in the school district. Interpreted, it provides that the total of the money payable and applied to a situation where there are four coexistent governmental subdivisions, in lieu of taxes, to the school district, the city or village, the county, and the state, shall be distributed to the respective governmental subdivisions in the proportion that the levy of each for the current year bears to that total amount.

"The same interpretation would be equally applicable where the number of subdivisions was either more or less than four."

The funds here involved are not funds raised by taxation but are funds paid in lieu of taxes. No good and sufficient reason has been made apparent why funds received according to law in lieu of taxes should not be subject to the same legislative control as funds raised by tax levies. We held that they were so subject.

By the manner in which this court interpreted the foregoing sections of the statute, this court held that as to the first and second actions a new trial should be granted

and conducted in conformity with the opinion. As to the third action, this court held that decree should be rendered in conformity with the opinion, and reversed the judgment and remanded the cause with directions.

On retrial of the actions, the question of the formula to be used in making distribution was not in issue, having been determined by this court in our former opinion.

The record discloses the amounts allocated and distributed by the county treasurer to the junior college of Scottsbluff, the school district of Scottsbluff, and the city of Scottsbluff of the money paid in lieu of taxes by the Consumers Public Power District as provided for by the statutes cited above, and the demands made by these respective parties. The county treasurer testified to the formula he used in making such allocation and distribution. Due to the fact that the formula of distribution is not questioned in this appeal, we deem it unnecessary to set forth this evidence.

The trial court adjudged and decreed that the junior college district of Scottsbluff, the school district of Scottsbluff, and the intervener city of Scottsbluff should have judgments against the county treasurer and his surety in certain amounts with interest, and that the county treasurer and his surety have credit on the various judgments in certain amounts for payments made by the county treasurer to the junior college district, the school district of Scottsbluff, and the city of Scottsbluff. Attorneys' fees were awarded and taxed against the surety of the county treasurer, and all other costs except attorneys' fees were taxed against the county treasurer.

The defendants, P. Cooper Ellis and the National Surety Corporation, filed a motion for new trial which was overruled. Thereafter defendants perfected appeal to this court.

The principal assignment of error made by the appellants, and the one determinative of this appeal, may be stated as follows: The trial court erred in not finding

that the defendant Ellis, in making the distribution complained of, exercised discretion and judgment in the performance of his official duties as county treasurer in determining the facts and interpreting and applying the statutes, and in doing so was exercising a quasi-judicial function, and therefore, the defendant Ellis and his surety company were not liable in any event for any amount.

We now discuss the assignment of error above stated.

At the outset it might be said that a county treasurer is considered to be a ministerial officer performing ministerial duties. See, Jones v. Duras, 14 Neb. 40, 14 N. W. 537; State ex rel. Jordan v. Quible, 86 Neb. 417, 125 N. W. 619, 27 L. R. A. N. S. 531. However, if ministerial officers can perform nothing but ministerial acts, then it is hard to conceive of such officer, for some of the acts of every ministerial officer must require the exercise of judgment and discretion, which is the very antithesis of a ministerial act. The ministerial officer may, therefore, very properly be invested with power and authority of a quasi-judicial character without at all affecting the general classification into which all civil officers are divided. See State v. Loechner, 65 Neb. 814, 91 N. W. 874, 59 L. R. A. 915.

The true test is whether the county treasurer in the instant case was performing a ministerial act or a quasi-judicial act and not whether he was a ministerial officer or a quasi-judicial officer.

It is the county treasurer's contention that he was required to exercise judgment and discretion as distinguished from a purely ministerial act in making the distribution of the money paid in lieu of taxes by the Consumers Public Power District.

In Larson v. Marsh, 144 Neb. 644, 14 N. W. 2d 189, 153 A. L. R. 101, it is said: "A ministerial act has been defined as one performed in response to a duty which has been positively imposed by law and its performance required at a time and in a manner or upon conditions

which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion. Mechem, Public Officers, 442."

From their nature, the powers and duties of public officers are, in general, classified as ministerial and discretionary. The character of a duty as ministerial or discretionary must be determined by the nature of the act to be performed, and not by the office of the performer. Official duty is ministerial when it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts; that a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in its nature. See 43 Am. Jur., Public Officers, § 258, p. 74. See, also, Stephens v. Jones, 24 S. D. 97, 123 N. W. 705.

The appellant treasurer asserts that he not only exercised judgment and discretion in the construction, interpretation, and application of a statute, or statutes, but had to exercise that same judgment and discretion in a determination of the basic facts involved, and had to determine the following matters before he could make the distribution: Which of all the taxing entities in Scotts Bluff County were entitled to share in the distribution; the groups of taxing entities entitled to share in the distribution of any particular portion of the sum available; and the particular portions of the sum available which should be distributed among each of the groups of taxing entities entitled to share in such sums.

In other words, the county treasurer is obligated to make an examination of the facts involving the distribution of the money paid by the Consumers Public Power District in lieu of taxes to all the subdivisons of government entitled to receive a proportionate share thereof. These conditions change from year to year and require investigation and interpretation of the facts

and the application of the same to the subject matter involved.

In construing section 70-653, R. R. S. 1943, the treasurer needs to know the total of the sums to be paid by the power district, then there must be a break-down of the total of the sums as to the situs of the property, description of the property, whether real property or personal property, and the amount paid in lieu of taxes. Many other duties pertinent to a determination of this distribution could be set out, but it would unnecessarily lengthen this opinion to do so.

There is no contention but that the treasurer acted in good faith in making the apportionment he did.

Section 70-653, R. R. S. 1943, is an uncertain and ambiguous statute. It does not sufficiently or adequately define with any degree of exactitude the duties of the county treasurer in making distribution of the funds paid in lieu of taxes by the Consumers Public Power District. This is manifest by the first appeal of this case to this court where it was obvious that the school district, the junior college district, the county treasurer, and the trial court failed to arrive at the proper formula by an interpretation of section 70-653, R. R. S. 1943. This is a clear indication of the ambiguousness of this statute.

In addition, the following are applicable.

Allen v. Miller, 142 Neb. 469, 6 N. W. 2d 594, was a law action brought by Allen, one of 27 precinct assessors in Lancaster County, in his own right and as assignee of 26 other precinct assessors, to recover damages from two members of the board of county commissioners of Lancaster County, these two members constituting a majority of the said board. The alleged damages arose because certain warrants, issued on claims duly allowed, were withheld from the plaintiff and his assignors from June 4, 1940, the date the claims were allowed, until February 7, 1941, when the warrants were finally delivered pursuant to a mandate of the Supreme Court.

The alleged damages consisted of the interest on each warrant between the dates mentioned. This court said that the question narrowed down to whether the two county commissioners, in voting to hold up the delivery of these several warrants, were performing a ministerial act, in which no discretion was involved, or whether it was a judicial act. It appeared that the problem presented to the county board was to decide a disputed question of what was meant by a day, which might be a day of 8 hours, as in some labor contracts, or a calendar day, and was definitely a judicial question for the board to determine. This court said: "This court agrees with the trial court in finding that the question of how a certain statute should properly be construed by the county board was not a ministerial act, but was clearly a quasi judicial act, * * *."

"A public officer is not liable to an action if he acts unwisely in a matter wherein it is his duty to exercise judgment and discretion, even though a private person may be damaged thereby." Harmer v. Petersen, 151 Neb. 412, 37 N. W. 2d 511. See, also, School Dist. v. Burress, 2 Neb. (Unoff.) 554, 89 N. W. 609.

"The general rule is stated that an administrative officer ("administrative officer" is used interchangeably with "ministerial officer") is not personally liable in a civil action for damages for his error or mistake in making a determination, where he was acting within his jurisdiction, in the honest exercise of his judgment, without bad faith, malice, or corrupt motives, in a judicial or quasi-judicial capacity, or in a capacity which was not merely ministerial but one in which it was his duty to exercise judgment and discretion. * * * The rule of immunity protects an officer from liability for a mistake of fact or an erroneous construction and application of the law, or for an error of judgment in the determination of law or fact, including the officer's duties under the law. * * * Exemption from liability is unaffected by any subsequent reversal or correction

of the administrative judgment." 42 Am. Jur., Public Administrative Law, § 257, p. 705.

When the law, in words or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed quasi-judicial. See State v. Loechner, *supra*.

In Keifer v. Smith, 103 Neb. 675, 173 N. W. 685, the Legislature had created a stallion registration board whose duty it was to pass upon pedigrees and to license stallions for breeding purposes either as purebreds or grades. The statute made provision for resort to certain specified books in ascertaining whether a pedigree was signed by the proper officers of recognized stud associations, and whether such signatures were genuine. The board would have to make reference to these books. The court said that these acts necessarily involved the examination of evidence and the exercise of judgment. It was held: "In the absence of malice, oppression in office, or wilful misconduct, public officers cannot ordinarily be held liable for mistaken exercise of discretion, or error in judgment, in the performance of official duties."

We conclude that the county treasurer in the instant case was required to determine basic facts in an endeavor to ascertain the manner of the distribution of the money paid in lieu of taxes by the Consumers Public Power District and, in addition, to construe an ambiguous statute. To do these things required the use of judgment and discretion on the part of the county treasurer. We hold that no liability attaches personally to the county treasurer or his surety under the circumstances presented by this record.

In the light of our holding, attorneys' fees are not allowable as against the county treasurer or his surety in this case.

The decree of the district court is reversed and the

cause remanded with directions to enter judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.