ROCK COUNTY, NEBRASKA, APPELLANT, V. ROBERT M. SPIRE,
ATTORNEY GENERAL OF THE STATE OF NEBRASKA, ET AL.,
APPELLEES.
455 N.W.2d 763

Filed May 25, 1990.   No. 88-075.

Richard P. Nelson, of Peterson Nelson Johanns Morris & Holdeman, for appellant.

Robert M. Spire, Attorney General, and Royce N. Harper for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

## I. INTRODUCTION

In this declaratory judgment action brought pursuant to Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1989), plaintiff-appellant, Rock County, sought to have Neb. Rev. Stat. § 68-718 (Reissue 1986), which constitutes a codified portion of 1982 Neb. Laws, L.B. 522, declared unconstitutional and unenforceable. The district court, judging the statute valid, granted summary judgment to the defendants-appellees, State of Nebraska; Robert M. Spire, Attorney General of the State of Nebraska; Kermit McMurry, director of the Nebraska Department of Social Services; and three employees of the Department of Social Services. Rock County appeals, asserting that § 68-718 impermissibly authorizes "the transfer of property purchased solely with county funds out of that county, and for the benefit of others outside that county"; violates Neb. Const. art. VIII, § 1A,

which prohibits the State from levying a property tax for state purposes; and violates the county's due process rights under U.S. Const. amends. V and XIV and Neb. Const. art. I, § 3.

## II. FACTS

Prior to the Legislature's enactment of L.B. 522, which became operative July 1, 1983, the state social services system had been administered by the counties under the supervision of the State. Using moneys provided by local property tax revenues, each county contributed to certain of the programs, including having to contribute 20 percent of the moneys necessary for medical assistance, and each county paid certain administrative costs. As a result of the enactment of L.B. 522, the administration of social services programs became the sole responsibility of the State, to be supervised by its Department of Social Services, hereinafter referred to simply as Department. See Neb. Rev. Stat. § 68-717 (Supp. 1989). After the enactment of L.B. 522, although the counties remained responsible for general assistance, they were relieved of many of the costs of administering social services programs, including no longer being required to contribute 20 percent of the moneys necessary for medical assistance. One intent of the Legislature in enacting L.B. 522 was to shift the method of funding the social services programs from the property tax to state sales and income tax revenues. Statement of Intent, Committee on Public Health and Welfare, 87th Leg., 2d Sess. (Mar. 17, 1981).

L.B. 522 also provided, as codified in § 68-718, for the transfer of "[a]ll furniture, equipment, books, files, records, and personnel utilized by the county divisions or boards of public welfare for the administration of public assistance programs" to the Department.

In March 1986, the Department notified Rock County that the Department office located in Bassett, Nebraska, a city within Rock County, was relocating to Ainsworth, Nebraska, a city within Brown County, and that pursuant to § 68-718 the furniture and equipment located in the Bassett office would be transferred to the Ainsworth office. The items of furniture and equipment in question were purchased by property tax moneys collected from residents of Rock County and had been used by

Rock County for conducting the activities of the Rock County division of social services. The Department currently intends that the Ainsworth office will supervise the disbursement of social services moneys to those persons living in Brown, Keya Paha, and Rock Counties.

For two of the items, Rock County has been reimbursed at least in part by the State. The State reimbursed Rock County in the amount of $188 for all or part of the purchase price of an adding machine and $200 for all or part of the purchase price of a self-correcting electric typewriter.

### III. ANALYSIS

No defendant having questioned the county's standing to challenge the authority of the Legislature to transfer property from one county to another, we undertake the analysis required by the county's assertions.

### 1. Authority of Legislature

The county's initial claim is that the Legislature's attempt, pursuant to § 68-718, to transfer its property to the Department without restrictions as to the manner or place of use exceeds the Legislature's authority to control county property. The county urges that property derived solely from the property taxes collected in a particular county must be used solely for the benefit of that county.

The seminal Nebraska case on this subject is *State, ex rel. City of Omaha, v. Board of County Commissioners*, 109 Neb. 35, 189 N.W. 639 (1922). Therein, the city of Omaha brought a mandamus action to compel the county commissioners of Douglas County to furnish office rooms in the county courthouse for the use of Omaha's municipal courts pursuant to a statute requiring such in return for a yearly rental from the city of Omaha. The county commissioners argued that the statute "takes the property of Douglas county and appropriates it to the use of the city of Omaha without due process of law . . . ." *Id.* at 40, 189 N.W. at 641. We upheld the statute against the constitutional challenge, reasoning:

It must be remembered that a county does not possess the double governmental and private character that cities do. It is governmental only, and in that capacity acts

purely as an agent of the state. The funds raised by taxation in the county are subject to the direction and control of the legislature for public use in that county, and the property of the county, acquired by funds raised through taxation, is property of which the state can direct the management and disposition, so long at least as it acts for the benefit of the public in the taxing district. [Citations omitted.]

. . . A county, "being a mere instrumentality of the state for the convenient administration of government, is at all times, both as to its powers and its rights, subject to legislative control. While it is no doubt true that the legislature has not such transcendent and absolute power over these bodies that it can apply property held by them to private purposes or to public purposes wholly disconnected with the community embraced within their limits, still it is likewise true that a purely public corporation, like a county, cannot acquire any vested interest which will preclude the legislature from directing the application of all its property and rights to the performance of those governmental functions which pertain to the community embraced within the corporation, and for the performance of which the corporation was created. If it were otherwise, counties, instead of being agencies of the state for administering the government, would be petty sovereignties, to impede and defeat the state with claims of local interest and authority." [*Erskine v. Steele County,* 87 F. 630 (C.C.D.N.D. 1898)].

The revenues of the county do not become the property of the county in the sense of private ownership, and the legislature has authority to prescribe the division and apportionment of money, raised by county taxation, between the county and a city within its limits. [Citation omitted.] It is true that the legislature could not divert funds raised by one district to the use of another district [citation omitted], since a tax levied for a public purpose must also be levied for the use of the district which is taxed. Should the legislature order that money be raised by one district and paid to another district, to be used for

the sole benefit of that other district, that would be an exaction of money for the benefit of others than those who are taxed and clearly beyond what could be justified as taxation. [Citation omitted.]

The municipal courts of the city of Omaha are a branch of the judicial system of the state. [Citations omitted.] Their function is governmental, and the service they render is a public service. It cannot be said that they serve alone the citizens of Omaha. Though their jurisdiction of the person is limited to the boundaries of Omaha, many persons throughout the county have opportunity to use these courts. . . . No doubt the legislature considered that the service rendered by the municipal courts, in civil cases lightened the work of the district and county courts; also that it would be of benefit to have the several courts accessible in one building.

The legislature, we believe, had the power, in the first instance, had it desired to exercise it, to require the county to raise funds and contribute to the support and maintenance and housing of municipal courts, for these courts render a service and are of benefit to the entire county, being a branch of the general judicial system and a part of the law-enforcing machinery of the state. [Citations omitted.]

The legislature would also have had the right to describe, as a condition to the right of the county to levy a tax, how and in what manner the courthouse should be used for the benefit of the citizens in the county. Surely, if that is true, the legislature still has the power and the authority to direct and control the use and management of this property, to the end of gaining what, in its judgment, will best serve the public needs and be of most general benefit to the public in the district.

We see no reason why it cannot now direct, as it has done by the statute in question, that the municipal courts shall be housed in that building. This is not a diversion of funds or property of the county to the use of persons who have not contributed by taxation to those funds. A large part of the contributions from which the courthouse was

built was furnished by the city of Omaha. It is simply an apportionment of the use for general benefits and a direction as to how the property, procured by those funds, shall be used to the interest and benefit of the taxpayers in that particular taxing district.

*State, ex rel. City of Omaha, v. Board of County Commissioners,* 109 Neb. 35, 40-43, 189 N.W. 639, 641-42 (1922). See, also, *City of Grand Island v. County of Hall,* 196 Neb. 282, 242 N.W.2d 858 (1976); *State ex rel. School Dist. of Scottsbluff v. Ellis,* 168 Neb. 166, 95 N.W.2d 538 (1959) (the benefits of taxation should be directly received by those directly concerned in bearing the burdens of taxation so a Legislature cannot divert taxes raised by one taxing district to the sole use and benefit of another district); *Omaha Parking Authority v. City of Omaha,* 163 Neb. 97, 77 N.W.2d 862 (1956) (State has right to direct the use, management, and disposition of county property so long as it is done for the benefit of the public in the taxing district); *State ex rel. School Dist. v. Ellis,* 160 Neb. 400, 70 N.W.2d 320 (1955), *appeal on remand* 163 Neb. 86, 77 N.W.2d 809 (1956) (Legislature has power to take funds raised by one governmental subdivision and give them to another governmental subdivision if it is done for the benefit of the public in the taxing district).

We are not persuaded by the county's contention that the State lacks the authority to make this transfer of the county's property. As the foregoing decisions demonstrate, the State has the right to direct the use, management, and disposition of county property so long as it is done for the benefit of the public in the taxing district. By passing L.B. 522, the Legislature consolidated the administration of social services programs, which programs were previously provided by the several counties, under the sole direction of the State and has appropriated the property of the various counties for the use and benefit of all the counties. Regardless of where the property of the various counties is used, all of the counties receive the benefit of the property as used in meeting the social services needs of those who reside within their respective borders. The Legislature has not exceeded its authority.

## 2. Property Tax

The county next contends that § 68-718 violates Neb. Const. art. VIII, § 1A, which provides: "The state shall be prohibited from levying a property tax for state purposes." The county argues that "the state takeover [of the social services programs] reflected a predominant state interest in administering welfare assistance on the state level rather than the county level." Brief for appellant at 16.

In one of Nebraska's first cases on this subject, *Craig v. Board of Equalization*, 183 Neb. 779, 164 N.W.2d 445 (1969), a taxpayer challenged, as violative of Neb. Const. art. VIII, § 1A, a state statute which required each county to use property tax revenues to pay for the care of its indigent residents in state institutions. Quoting from *State v. Douglas County*, 18 Neb. 601, 26 N.W. 378 (1886), which involved a challenge to a statute which required each county to levy a property tax to pay the expense of maintenance of its own residents in state mental hospitals, we stated:

"While it is true that the hospital for the insane is . . . a state institution, yet . . . maintenance of the insane is not necessarily a state burden, and therefore it is within the power of the legislature to require that the tax be levied and collected by each county for the purpose of reimbursing the state . . . ."

*Craig, supra* at 783, 164 N.W.2d at 447. We concluded that the statute was constitutional, reasoning:

The county has been viewed historically as a limited agency. Funding most, if not all, county functions has served state purposes. State government has remained largely free to supervise local administration of the property tax. Programs of state assistance to local units have been tied to effective, equitable use of the property tax by the local units themselves. Federal, state, and local governments have joined to combat conditions of common concern. [Citations omitted.]

. . . We therefore conclude that a statute requiring a county to levy a property tax for purposes substantially local does not contravene the [constitutional] prohibition, although the statute commingles state and local purposes.

*Id.* at 783-84, 164 N.W.2d at 448.

In the next case on this subject, *R-R Realty Co. v. Metropolitan Utilities Dist.*, 184 Neb. 237, 166 N.W.2d 746 (1969), a taxpayer again challenged, as violative of Neb. Const. art. VIII, § 1A, a state statute which required the municipality or the county to levy a property tax for purposes of local fire protection. Holding that the statute did not contravene the constitutional provision, we stated:

> Such a tax is no different than many other taxes previously assumed to be strictly local levies for local purposes in which amounts are certified by school districts or other bodies to the local governmental authority required to make the levy.
>
> If we were to accept the reasoning urged by the plaintiff, any property tax for governmental purposes levied by a city or county under legislative directions fixing a maximum amount and a maximum levy would become a tax levy by the state for state purposes. In order for the state Constitution to restrict the plenary power of the Legislature to tax, the language of the restriction must be clear. Craig v. Board of Equalization, 183 Neb. 779, 164 N.W.2d 445.
>
> The levy of a property tax by a local governmental unit should not be treated as a state levy for state purposes merely because the Legislature has authorized or required the local governmental unit to make the levy. Neither should the fact that the tax is for a "governmental" purpose make it automatically for state purposes rather than local.

*R-R Realty Co., supra* at 240, 166 N.W.2d at 748.

In the case on which the county places major reliance, *State ex rel. Western Nebraska Technical Com. Col. Area v. Tallon*, 192 Neb. 201, 219 N.W.2d 454 (1974) (*Tallon I*), the county treasurer of Sheridan County asserted that a state statute, which as part of the "Technical Community College Area Act" required the county to raise funds by a property tax in partial support of the system of technical community colleges, was violative of Neb. Const. art. VIII, § 1A. Prior to the passage of the Technical Community College Area Act, technical

community colleges were local institutions, locally controlled and financed by taxes on property within the local district. As a result of the act's enactment, the colleges were all placed into a statewide system provided for under the act. The act created a State Board of Technical Community Colleges, which was given general supervision and control over the state system of technical community colleges. We determined that "where the State assumes the control and the primary burden of financial support of a statewide system of technical community college areas," the property tax levy is for state purposes in contravention of the constitutional provision prohibiting such. *Tallon I, supra* at 213, 219 N.W.2d at 461. We reasoned as follows:

> Where state and local purposes are commingled in a statutory enactment creating a new, independent, statewide system of technical community college areas, the crucial issue of the use of property tax levies to support the system turns on a determination of whether the controlling and predominant purposes are state purposes or local purposes. The application of the constitutional amendment prohibiting the State from levying a property tax for state purposes hinges on that determination. The question of whether an act of the Legislature pertains to state purposes or local purposes is a judicial question. There is no sure test by which state purposes may be distinguished from local. This court must consider each case as it arises and draw the line of demarcation. [Citation omitted.] The Legislature has the power to provide by statute for the establishment of a new post-secondary educational system which might be either state or local. Viewed from the historical perspective of educational systems previously established in Nebraska, the pattern of the statewide system here more closely fits the pattern of an independent state system such as the state college system or the state university system, than it does the pattern of a traditional local educational system.

> Under the act with which we are concerned here, the State has assumed the direct control of major policy decisions which affect the operation of each of the seven

community college areas, and the statute reflects a purpose to control the operation of all seven areas for the benefit of the residents of the state as a whole. The provisions requiring that the tuition in any technical community college area for any resident of the State of Nebraska shall be the same as for a resident of the particular area is a strong indication of the legislative purpose to benefit residents of the entire state as contrasted to residents of particular local areas. The direct control by the State over capital expenditures, the right to contract for acquisitions and additions, and to control and direct which facilities and training will be available in which area, together with the complete and direct control of the individual budget of each technical community college area, demonstrate the dominance of the State as opposed to the local areas in all major matters of control and operation of the statutory system. It is undoubtedly true that such direct control will result in a more efficient and coordinated operation and avoid expensive and uneconomical duplication of facilities and services. Those particular objectives in themselves reflect the dominance of a purpose to benefit the state as a whole.

. . . To construe the constitutional amendment to prohibit only a direct statewide property tax levy by the State itself would emasculate the amendment and render it virtually meaningless and wholly ineffective.

*Id.* at 210-12, 219 N.W.2d at 460. We distinguished the statutes considered in *Craig v. Board of Equalization,* 183 Neb. 779, 164 N.W.2d 445 (1969), and *R-R Realty Co. v. Metropolitan Utilities Dist.,* 184 Neb. 237, 166 N.W.2d 746 (1969), because "[b]oth cases reflect a factual situation in which the property tax levy was for purposes substantially and predominantly local." *Tallon I, supra* at 210, 219 N.W.2d at 460.

The Legislature, having repealed the version of the Technical Community College Area Act considered in *Tallon I,* adopted a new version which was challenged in *State ex rel. Western Technical Com. Col. Area v. Tallon,* 196 Neb. 603, 244 N.W.2d 183 (1976) *(Tallon II).* Under the new version, the technical community colleges were no longer dominated by a state board

or subject to a compulsory property tax. Instead, the operation of each respective college was controlled by its area board subject only to guidelines laid down by the Legislature, and each area board was given authority to levy property taxes if desired. We determined that the new scheme was not state dominated and therefore did not violate the constitutional mandate that the State not levy a property tax for state purposes. We stated:

> We are aware of the fact that when [Neb. Const. art. VIII, § 1A,] was adopted in its original and amended form, its purpose was to require the state, after the adoption of sales and income taxes, to leave the property-tax field. No state interest or function could then be financed by means of property taxes, but all traditional state interests and functions must be financed by means other than property taxes. In other words, the state Legislature cannot avoid or circumvent the constitutional mandate by converting the traditional state functions into local functions supported by property taxes. At the time of the adoption of this constitutional provision, it was inherent in its adoption that the state would continue to administer its traditional functions and finance them by means other than a property tax. . . . There is no conflicting tradition relating to state support of technical community colleges. The schools and junior colleges taken over by the technical community colleges were, at least generally, local in nature and supported by local property taxes. Those receiving state aid still were required to have local participation as provided for in the present act.

*Tallon II, supra* at 606, 244 N.W.2d at 186.

In *Kovarik v. County of Banner*, 192 Neb. 816, 224 N.W.2d 761 (1975), we upheld against constitutional challenge a state statute which required the county to pay the costs of furnishing counsel to indigent defendants. We determined that criminal prosecutions were predominantly local in purpose and benefit, and said: "[H]istorically and traditionally the counties have been given the responsibility of paying for the expenses of criminal prosecution. In adopting [Neb. Const. art. VIII,

§ 1A], there is no reason to believe the people intended to disturb the historical method of financing criminal prosecutions." *Kovarik, supra* at 824-25, 224 N.W.2d at 766.

Finally, in *State ex rel. Meyer v. County of Banner*, 196 Neb. 565, 244 N.W.2d 179 (1976), we upheld state statutes which required the county to pay the costs for maintaining county and district courts, for prosecuting state criminal law violations, and for conducting state and national elections. We followed *Kovarik v. County of Banner, supra*, holding that the governmental activities at issue had always been regarded as being substantial functions of the counties, and explained:

> [Neb. Const. art. VIII, § 1A], first adopted in 1954, became effective in its present form in 1966. . . . Prior to 1966, there was no income or sales tax, and the principal tax source for the support of state government was a property tax, imposed by a state levy, separate and distinct from the levies imposed by counties, cities, and other political subdivisions. The amendment became effective with the adoption of an income and sales tax by the State in 1966.
>
> The amendment, by its terms, prohibits only the State from levying a property tax, and then only for state purposes. It does not affect the use of property taxes by a county, city, or other local subdivision. Counties, cities, and other taxing subdivisions of state government have traditionally relied and still rely upon property taxes as their major source of revenue. Historically and currently the governmental activities supported by a county property tax at the time the amendment was adopted were and are serving substantial local purposes. The constitutional amendment was not intended to disturb that tax structure nor effect any change in the use of property taxation by any governmental unit except the State itself.

*State ex rel. Meyer, supra* at 568-69, 244 N.W.2d at 181.

As reflected in the previously discussed decisions, the application of the constitutional provision prohibiting the State from levying a property tax for state purposes hinges on a determination of whether the controlling and predominant

purposes of a statute alleged to violate the provision are state purposes or local purposes. The more recent cases contemplate that in making the foregoing determination, the historical and traditional taxing pattern is a factor to be considered.

The State asserts that by authorizing the transfer of the county's property to the Department, the State is not directly levying a property tax. As the county articulates, however, the Legislature cannot circumvent an express provision of the Constitution by doing indirectly what the Constitution prohibits it from doing directly. *Banner County v. State Bd. of Equal.*, 226 Neb. 236, 411 N.W.2d 35 (1987); *Nebraska P. P. Dist. v. Hershey School Dist.*, 207 Neb. 412, 299 N.W.2d 514 (1980); *United Community Services v. The Omaha Nat. Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956).

Nevertheless, the Legislature did not contravene the constitutional prohibition by authorizing the transfer of the county's property. Although the State has assumed responsibility for the administration of social services programs, providing such services to people in need still remains a matter which is of local concern. Certainly, historically, the county has been responsible for certain of the costs of social services programs, including, obviously, the cost of purchasing the furniture and equipment at issue here. Under the ownership of the Department, the county's furniture and equipment will continue to be used for predominantly local purposes.

### 3. Rights of County

Lastly, the county argues that the transfer of its property to the Department violates its right to due process under U.S. Const. amends. V and XIV and Neb. Const. art. I, § 3, in that the transfer is arbitrary and unreasonable for the reasons it unsuccessfully advanced in the foregoing parts III(1) and (2) of this opinion, and that the transfer constitutes a taking without compensation.

### (a) Due Process

U.S. Const. amend. XIV and Neb. Const. art. I, § 3, prohibit the State from depriving any "person" of life, liberty, or property without due process of law. A county, as a creature

and political subdivision of the State, is neither a natural nor an artificial person. See, *Seward County Board of Commissioners v. City of Seward,* 196 Neb. 266, 242 N.W.2d 849 (1976); *State ex rel. Johnson v. County of Gage,* 154 Neb. 822, 49 N.W.2d 672 (1951); *Speer v. Kratzenstein,* 143 Neb. 310, 12 N.W.2d 360 (1943); *City of Fremont v. Dodge County,* 130 Neb. 856, 266 N.W. 771 (1936); *State, ex rel. City of Omaha, v. Board of County Commissioners,* 109 Neb. 35, 189 N.W. 639 (1922). Accordingly, a county cannot invoke the protection of the 14th amendment against the State. See, *Collier v. Poe,* 732 S.W.2d 332 (Tex. Crim. App. 1987), *appeal dismissed* 484 U.S. 805, 108 S. Ct. 51, 98 L. Ed. 2d 15 (political subdivisions of the state may not challenge the validity of a state statute under the 14th amendment); *Delta Special School Dist. No. 5 v. State Bd. of Educ. for State of Ark.,* 745 F.2d 532 (8th Cir. 1984) (political subdivision of state cannot invoke protection of 14th amendment against state); *Bor. of Pitman v. Skokowski,* 193 N.J. Super. 215, 473 A.2d 100 (1984) (borough lacks standing to invoke protection of 14th amendment against the state); *Mtr Bowen v State Comm.,* 104 A.D.2d 238, 484 N.Y.S.2d 210 (1984) (political subdivision of state cannot claim rights under Constitution against state action); *Ark. State Hospital v. Goslee, Gdn.,* 274 Ark. 168, 623 S.W.2d 513 (1981) (agency or political subdivision of state cannot invoke protection of 14th amendment against state itself); *City of Atlanta v. Spence,* 242 Ga. 194, 249 S.E.2d 554 (1978) (a county or municipal corporation, created by the Legislature, does not have standing to invoke the equal protection and due process clauses of state and federal Constitutions in opposition to will of its creator); *Trenton v. New Jersey,* 262 U.S. 182, 43 S. Ct. 534, 67 L. Ed. 937 (1923); *Kent County v DSS,* 149 Mich. App. 749, 386 N.W.2d 663 (1986) (local units of government, such as counties, are creatures of the Legislature and, as such, have no due process rights to invoke against the will of their creator); *Santa Monica Community College v. P. E. R. B.,* 112 Cal. App. 3d 684, 169 Cal. Rptr. 460 (1980). The county's assertion that the transfer of property by the Legislature was in violation of the due process required by U.S. Const. amend. XIV and Neb. Const. art. I, § 3, is therefore without merit.

## (b) Taking

Neither is there any merit to the county's argument that the Legislature's transfer of the office equipment and other property to the Department constitutes a taking for which the county was not compensated. Whereas Neb. Const. art. I, § 21, provides that the property of no person shall be taken or damaged for a public use without just compensation, the U.S. Constitution prohibits the State from taking private property for public use without providing just compensation. U.S. Const. amends. V and XIV.

Because, as we have established, the county is not a person, it is not within the protections afforded by Neb. Const. art. I, § 21. Neither may the county claim compensation under the federal Constitution. Under Nebraska law a county lacks authority to hold property in a proprietary capacity and may hold only property which is dedicated to a public use. See, *State ex rel. Johnson v. County of Gage, supra; State, ex rel. City of Omaha, v. Board of County Commissioners, supra*. The State therefore does not take private property within the meaning of U.S. Const. amend. V when it takes property from the county and is not required to compensate the county.

## IV. DECISION

Summary judgment is properly granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there exists no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from the material facts and that the moving party is entitled to judgment as a matter of law. *Peterson v. Don Peterson & Assoc. Ins. Agency*, 234 Neb. 651, 452 N.W.2d 517 (1990); *Whitehead Oil Co. v. City of Lincoln*, 234 Neb. 527, 451 N.W.2d 702 (1990).

This being such a case, the judgment of the district court is affirmed.

AFFIRMED.