You have each requested our opinion concerning whether LB 332, as originally introduced or as amended by pending AM0795 or AM1338, violates Neb. Const. art. III, § 24. The specific question raised is whether the additional State Lottery fund distributions to the Compulsive Gamblers Assistance Fund proposed under the bill or these amendments are contrary to the distribution scheme established in Neb. Const. art. III, § 24, by the recent passage of Amendment 4. For the reasons set forth below, we conclude that the additional distributions proposed are unconstitutional because they are inconsistent with the specific distribution mechanism established in the Constitution.
1. LB 332 and Its Pending Amendments.
LB 332 as introduced proposes to create the Office of Problem Gambling Services within the Department of Health and Human Services Division of Behavioral Health Services. The bill's Statement of Intent states the Office would "be funded through the Compulsive Gamblers Assistance Fund which includes revenue transferred from the State Lottery Operation Trust Fund, the Charitable Gaming Operations Fund, fees or reimbursements and any unclaimed prize funds in the State Lottery Operation Trust Fund. . . ." LB 332, Statement of Intent at 1. Section 2 of LB 332 provides for transfer to the Compulsive Gamblers Assistance Fund of "any unclaimed prize funds in the State Lottery Operation Trust Fund. . . ." The original bill would be replaced by the pending Committee amendment (AM0795). AM0795 does not propose creation of a new Office of Problem Gambling Services, but amends Neb. Rev. Stat. § 9-812 (Cum. Supp. 2004) to require the State Treasurer in each fiscal year to transfer $500,000 of unclaimed State lottery prize money to the Compulsive Gamblers Assistance Fund. Another pending amendment (AM1338) would delete the language providing for distribution from unclaimed prize funds and add language requiring the State Treasurer to transfer $500,000 each fiscal year from the State Lottery Operation Cash Fund to the Compulsive Gamblers Assistance Fund. AM1338 further provides that "[t]his transfer shall take place before any other expenditures are made from the fund in any fiscal year, shall be taken from the advertising, promotion, and marketing budget of the state lottery, and shall be absorbed within the operating budget of the state lottery without increased appropriations to such fund by the legislature." The transfer of State Lottery funds in § 2 of LB 332 and in AM0795 and AM1338 is in addition to the initial $500,000 transfer to the Compulsive Gamblers Assistance Fund currently required by § 9-812. Section 9-812 also provides that "[o]ne percent of money remaining after payment of prizes and operating expenses and the initial transfer to the Compulsive Gamblers Assistance Fund shall be transferred to the Compulsive Gamblers Assistance Fund. . . ." Neb. Rev. Stat. § 9-812(1) (Cum. Supp. 2004).
II. Neb. Const. art. III, § 24, as amended by LR 209CA
In November 2004, the electorate approved an amendment to Neb. Const. art. III, § 24 (LR 209CA) which altered the language in the Constitution relating to the distribution of State Lottery proceeds. The Committee Statement to LR 209CA stated:
 LR 209CA adds language to the Nebraska Constitution specifically setting out how the proceeds from the state lottery shall be used. The constitution currently leaves those decisions to the Legislature. It does not change the language allowing for a portion of the proceeds to go to the costs of establishing and maintaining the lottery, but rather directs the Legislature how to allocate the remaining proceeds after the payment of prizes and operating expenses.
Committee Statement on LR 209CA, 98th Leg., 2nd Sess., at 1-2 (February 2, 2004) (emphasis added).
The ballot language for the proposed constitutional amendment, presented as Amendment 4, advised:
 A vote FOR this proposal would provide a conditional guarantee of 10 percent of state lottery proceeds to the Nebraska State Fair Board for operations of the Nebraska State Fair and specify the distribution of the remaining proceeds. Currently, the distribution is made by the Legislature. Under this proposal, after payment of prizes and operating expenses and $500,000 to the Compulsive Gamblers Assistance Fund, the remaining state lottery proceeds would be distributed as follows: (1) 44 1/2% to the Nebraska Environmental Trust Fund to be used as provided in the Nebraska Environmental Trust Act, (2) 44 1/2% to be used for education as the Legislature may direct, (3) 10% to the Nebraska State Fair Board if the most populous city within the county in which the fair is located provides matching funds equivalent to 10 percent of the amount available for transfer to the board, but if the fair ceases operations, this share would be transferred to the state General Fund, and (4) 1% to the Compulsive Gamblers Assistance Fund.
A vote AGAINST this proposal will retain the Legislature's authority to distribute state lottery proceeds.
The amendment was approved by the voters, and amended subsection (3)(a) of art. III, § 24, now provides:
 The Legislature may establish a lottery to be operated and regulated by the State of Nebraska. The proceeds of the lottery shall be appropriated by the Legislature for the costs of establishing and maintaining the lottery and for the following purposes, as directed by the Legislature:
 (i) The first five hundred thousand dollars after the payment of prizes and operating expenses shall be transferred to the Compulsive Gamblers Assistance Fund;
 (ii) Forty-four and one-half percent of the money remaining after the payment of prizes and operating expenses and the initial transfer to the Compulsive Gamblers Assistance Fund shall be transferred to the Nebraska Environmental Trust Fund to be used as provided in the Nebraska Environmental Trust Act;
 (iii) Forty-four and one-half percent of the money remaining after the payment of prizes and operating expenses and the initial transfer to the Compulsive Gamblers Assistance Fund shall be used for education as the Legislature may direct;
 (iv) Ten percent of the money remaining after the payment of prizes and operating expenses and the initial transfer to the Compulsive Gamblers Assistance Fund shall be transferred to the Nebraska State Fair Board if the most populous city within the county in which the fair is located provides matching funds equivalent to 10 percent of the funds available for transfer. Such matching funds may be obtained from the city and any other private or public entity, except that no portion of such matching funds shall be provided by the state. If the Nebraska State Fair ceases operations, 10 percent of the money remaining after the payment of prizes and operating expenses and the initial transfer to the Compulsive Gamblers Assistance Fund shall be transferred to the General Fund; and
 (v) One percent of the money remaining after the payment of prizes and operating expenses and the initial transfer to the Compulsive Gamblers Assistance Fund shall be transferred to the Compulsive Gamblers Assistance Fund.
III. Do the Additional State Lottery Fund Distributions to the Compulsive Gamblers Assistance Fund Proposed in LB 332, or as amended by Pending AM0795 or AM1338, Contravene the Distribution Scheme Established in Article III, § 24?
The question presented is whether the additional State Lottery fund distributions to the Compulsive Gamblers Assistance Fund proposed under LB 332, or as amended by pending AM0795 or AM1338, are contrary to the distribution scheme established in art. III, § 24, by the passage of Amendment 4. Art. III, § 24, as amended, provides that the proceeds of the State Lottery "shall be appropriated by the Legislature for the costs of establishing and maintaining the lottery and for the following purposes, as directed by the Legislature. . . ." Art. III, § 24(3)(a). The specific purposes are then set forth in subdivisions (i) through (v) of subsection (3)(a), which expressly provide for the use of lottery proceeds after payment of prizes and operating expenses as follows: (1) Transfer of the first $500,000 to the Compulsive Gamblers Assistance Fund; (2) Transfer of the remaining 44½ % to the Nebraska Environmental Trust Fund; (3) Transfer of the remaining 44½ % to be used for education; (4) Transfer of the remaining 10% to the Nebraska State Fair Board, if certain conditions are met; and (5) Transfer of the remaining 1% to the Compulsive Gamblers Assistance Fund.
In construing the meaning of art. III, § 24, as amended, certain rules of interpretation must be considered. "Constitutional provisions, like statutes, are not open to construction as a matter of course; construction is appropriate only when it has been demonstrated that the meaning of the provision is not clear and therefore that construction is necessary." Pig Pro Nonstock Cooperative v. Moore, 253 Neb. 72, 81,568 N.W.2d 217, 223 (1997). "Courts must apply and enforce the Constitution as it is written." State ex rel. Spire v. Public Employees Retirement Bd., 226 Neb. 176,178, 410 N.W.2d 463, 465 (1987). "In construing a constitutional amendment to ascertain the intent of the people adopting it, courts must find such intent in the language of the amendment itself and must not hold that the people intended anything different than the language employed imports." Sorenson v. Swanson, 181 Neb. 205,212-13, 147 N.W.2d 620, 625 (1967). "In determining the meaning of a constitutional provision, [a court] must look to the plain and clear language contained therein." Banner County v. State Bd. of Equal., 226 Neb. 236, 252,411 N.W.2d 35, 45 (1987).
Applying these principles, the additional distribution of State Lottery proceeds to the Compulsive Gamblers Assistance Fund in LB 332, or as amended under proposed AM0795 or AM1338, is contrary to the distribution scheme mandated by art. III, § 24. The constitutional provision requires that lottery proceeds "be appropriated by the Legislature for the costs of establishing and maintaining the lottery" and for various enumerated purposes set forth in subdivisions (i) to (v) of art. III, § 24(3)(a). The purposes specify that, after payment of prizes and operating expenses, the first $500,000 is transferred to the Compulsive Gamblers Assistance Fund, and, after that, specified percentages of remaining funds are to be transferred to the Nebraska Environmental Trust Fund (44 ½ %), for education as directed by the Legislature (44 ½ %), to the State Fair Board (10%), and, finally, the remainder goes to the Compulsive Gamblers Assistance Fund (1%). The intent behind enactment of this distribution scheme was to direct with specificity how the Legislature must distribute lottery proceeds. Prior to the adoption of Amendment 4, art. III, § 24, provided "[t]he proceeds of the lottery shall be appropriated by the Legislature for the costs of establishing and maintaining the lottery and for other purposes as directed by the Legislature." Amendment 4 established a specific distribution formula requiring an initial $500,000 transfer of lottery proceeds after payment of prizes and operating expenses to the Compulsive Gamblers Assistance Fund, followed by certain percentage transfers of remaining funds for specified purposes, and, finally, a directive that the remaining 1 percent of proceeds be transferred to the Compulsive Gamblers Assistance Fund. The additional distribution of State Lottery funds under LB 332, either in its original form or as amended by AM0795 or AM1338, is inconsistent with this distribution scheme.
LB 332, as originally introduced, provides for transfer to the Compulsive Gamblers Assistance Fund of "any unclaimed prize funds in the State Lottery Operation Trust Fund . . . ." AM0795, which would replace the original bill, proposes to amend § 9-812(5) to require the transfer of $500,000 from unclaimed prize monies each fiscal year into the Compulsive Gamblers Assistance Fund. These transfers would be in addition to the $500,000 initial transfer required by art. III, § 24(3)(a)(i), which is already provided for in § 9-812(1), as well as the transfer of 1 percent of remaining monies after payment of prizes and operating expenses to the Compulsive Gamblers Assistance Fund required by art. III, § 24(3)(a)(v) and currently provided for under §9-812(1). Unclaimed prize monies are not part of "the payment of prizes or operating expenses", and the transfer of an additional $500,000 of lottery funds in this manner is inconsistent with the distribution scheme set forth in art. III, § 24. The Constitution as amended establishes a specific distribution scheme which necessarily precludes the transfer of lottery proceeds to the Compulsive Gamblers Assistance Fund beyond the initial $500,000 transfer and the 1 percent remainder transfer required under subsection (3)(a)(v). LB 332, as originally introduced or as amended by AM0795, provides for such an additional transfer of lottery proceeds to the Compulsive Gamblers Assistance Fund, and thus is contrary to the distribution mechanism established in art. III, § 24(3).
AM 1338 eliminates the transfer from unclaimed prize monies and replaces it with a $500,000 transfer each fiscal year from the State Lottery Operation Cash Fund to the Compulsive Gamblers Assistance Fund. This transfer would also be in addition to the initial $500,000 transfer required by art. III, § 24(3)(a)(i) and currently provided for under § 9-812(1), and the 1 percent "remainder" transfer to the Compulsive Gamblers Assistance Fund required by art. III, § 24(3)(a)(v) which is also currently provided for under § 9-812(1). AM1338 further provides that "[t]his transfer shall take place before any other expenditures are made from the fund in any fiscal year, shall be taken from the advertising, promotion, and marketing budget of the state lottery, and shall be absorbed within the operating budget of the state lottery without increased appropriations to such fund by the legislature." AM1338, § 1.
AM1338 is also contrary to art. III, § 24(3). While the intent of the amendment is unclear, it appears to be an attempt to consider these funds part of "operating expenses" which, along with prize payments, are to be accounted for before any of the transfers provided for under subsections (i) to (v) of art. III, § 24(3). "The Legislature's power of definition may not be employed to nullify or circumvent" constitutional provisions, State ex rel. Spire v. Strawberries, Inc., 239 Neb. 1, 8,473 N.W.2d 428, 434 (1991), and the Legislature may not "circumvent an express provision of the Constitution by doing indirectly what the Constitution prohibits it from doing directly." Rock County v. Spire, 235 Neb. 434, 447,455 N.W.2d 763, 770 (1990). If lottery funds are transferred to the Compulsive Gamblers Assistance Fund, they are not "operating expenses" as that term is used in art. III, § 24(3), as this term obviously relates to expenses incurred in establishing and maintaining the State Lottery. Thus, these funds, if not actually used to operate the lottery, would be proceeds otherwise available for distribution pursuant to the scheme set forth in art. III, § 24(3). Thus, the transfer of an additional $500,000 of lottery funds in this manner is inconsistent with the distribution scheme set forth in art. III, § 24, which permits only the initial transfer of lottery proceeds to the Compulsive Gamblers Assistance Fund of $500,000 and the 1 percent remainder transfer required under subsection (3)(a)(v). AM1338, by providing for a transfer of lottery funds in addition to the amounts specified in art. III, § 24(3), is thus contrary to the distribution mechanism established in the Constitution.
IV. Conclusion
Based on the foregoing, we conclude that LB 332, either as originally introduced or as amended by pending AM0795 or AM1338, provides for the distribution of State Lottery funds to the Compulsive Gamblers Assistance Fund in a manner which is inconsistent with the specific scheme established in art. III, § 24.
Very truly yours,
 JON BRUNING Attorney General
 L. Jay Bartel Assistant Attorney General
Approved: